**PRECENDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-4329
_____

RICHARD GRANDALSKI; JANET GRANDALSKI;
DENISE CASSESE, INDIVIDUALLY AND ON BEHALF
OF ALL OTHERS SIMILARLY SITUATED,

Appellants

v.

QUEST DIAGNOSTICS INC;
RETRIEVAL MASTERS CREDITORS BUREAU, INC.,
d/b/a AMERICAN MEDICAL COLLECTION;
CREDIT COLLECTION SERVICES;
CREDIT BUREAU CENTRAL;
QUANTUM COLLECTIONS; DOES 1 to 50

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.: 2-04-cv-04362)
District Judge: Honorable Stanley R. Chesler

_____

Argued on July 9, 2014

(Opinion filed: September 11, 2014)

Before:  RENDELL, CHAGARES and JORDAN,
Circuit Judges

Nicole M. Acchione, Esquire
Lisa J. Rodriguez, Esquire **(Argued)**
Schnader Harrison Segal & Lewis, LLP
220 Lake Drive, East
Woodland Falls Corporate Park
Suite 200
Cherry Hill, NJ   08002-1165
Joseph S. Tusa, Esquire
P. O. Box 566
Southold, NY  11971

Joseph S. Tusa, Esq.
Tusa
P.O. Box 566
Southolg, NY 11971
            Counsel for Appellants

Diane A. Bettino, Esquire
Mark S. Melodia, Esquire
Reed Smith
136 Main Street
Suite 250, Princeton Forrestal Village
Princeton, NJ   08540

Robert N. Hochman, Esquire **(Argued)**
Sidley Austin
One South Dearborn Street
Chicago, IL   60603

James S. Murphy, Esquire
Garrity, Graham, Murphy, Garofalo & Flinn
72 Eagle Rock Avenue
Suite 350, P. O. Box 438
East Hanover, NJ   07936
                    Counsel for Appellees

O P I N I O N

**RENDELL**, Circuit Judge:

Appellants filed a putative class action alleging that Quest Diagnostics Inc., a medical testing company, routinely overbilled patients.  The District Court denied certification as to all four of Appellants' proposed classes.  Following the denial, the Court granted summary judgment against an individual Appellant, Denise Cassese, as to her state law

consumer deception claim. For the reasons that follow, we will affirm the District Court's judgments.

## I. Background

Quest Diagnostics is the country's largest provider of diagnostic and clinical testing. In general, it tests a patient's specimens upon the request of a referring physician. Once Quest bills a patient's insurance provider, the provider reviews the claim and sends Quest an Explanation of Benefits ("EOB") or an Electronic Remittance Advice ("ERA"), which informs Quest of the amount, if any, that the patient is responsible for paying. Quest then sends the patient a bill, and, if no response is received, it may turn the bill over to a collection agency. Appellants advance numerous claims, but the heart of the case is the allegation that Quest billed patients in excess of the amount stated on the EOB or ERA.

Appellants sought certification of several classes related to this alleged overbilling.[1] First, they proposed a class of all persons who were billed by Quest and who paid an amount in excess of that stated on an EOB or ERA provided to Quest prior to the date of the bill (hereinafter, "Post-EOB Billing Class"). In addition, Appellants sought to certify a class of those persons similarly overbilled by Quest, who were members, participants, subscribers or beneficiaries of Anthem Blue Cross and Blue Shield and the Federal Employee Health Benefits Program (hereinafter, "Anthem

---

[1] Appellants previously sought certification of multiple classes with similar claims. The District Court denied this first motion for certification in *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437 (D.N.J. 2009), which was not appealed.

4

BCBS FEHB Program Class"). At oral argument, Appellants acknowledged that this class is properly regarded as a subclass of the Post-EOB Billing Class. Appellants pled multiple causes of action for both classes and on appeal urge that the District Court erred in denying certification as to two such claims: state law consumer fraud and unjust enrichment.

Because Appellants proposed these two nationwide litigation classes (as distinct from settlement classes), the District Court engaged in a choice of law analysis for the state consumer fraud claim, and found that the law of the class members' home states would apply. However, the Court concluded that applying so many different fraud statutes would be unwieldy and inappropriate for class treatment at trial. It further held that Appellants had not carried their burden to show precisely how the statutes could be grouped into a few categories for litigation, and accordingly denied certification to the Post-EOB Billing Class and the Anthem BCBS FEHB Program Class as to their state consumer fraud claims.

Concerning the unjust enrichment claim, the District Court found that there were numerous explanations for overbilling that would not be wrongful or unjust. Thus, the Court held that the evidentiary showing required for each class member to show unjust enrichment would be highly individualized, such that common issues of fact did not predominate between the class members. The Court further held that because the class definitions implicitly included a requirement of wrongful loss, given the attendant difficulty of determining liability, the classes themselves were not reasonably ascertainable. Accordingly, the Court denied certification for the Post-EOB Billing Class and the Anthem

5

BCBS FEHB Program Class as to their unjust enrichment claim.

Separately, Appellants proposed a class of all persons who received written demands from debt collectors retained by Quest which "i) stated that the debt collector may engage in 'additional' or 'further' collection efforts or may report a delinquency to credit bureaus; or ii) added interest, charges or penalties in excess of the original amount billed by Quest." (App. 19.) (hereinafter, "Debt Collector Victim Class")[2] Appellants state that they are now seeking certification as to only the second prong of that class, and only pursuant to a claim that the debt collectors violated the Fair Debt Collection Practices Act ("FDCPA"). On that issue, the District Court found that the proposed representative plaintiff, Richard Grandalski, was not a member of the Debt Collector Victim Class because he had never received a written demand from debt collectors. Without a representative plaintiff, the Court denied certification as to prong (ii) of the Debt Collector Victim Class on the FDCPA claim.

Finally, following the denial of class certification, the District Court granted summary judgment against Denise Cassese, in her individual capacity, as to her claim under New York General Business Law § 349.

## II. Jurisdiction and Standard of Review

---

[2] Appellants also proposed a class of Medicare Part B participants who were improperly billed by Quest. Appellants are not appealing the denial of certification as to this class.

6

The District Court had jurisdiction pursuant to, *inter alia*, 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. "We review a class certification order for abuse of discretion, which occurs if the district court's decision 'rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.' We review whether an incorrect legal standard has been used *de novo*." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 354 (3d Cir. 2013) (citation omitted).

Separately, on review of summary judgment we employ the same standard as the District Court pursuant to Fed. R. Civ. P. 56(a), that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## III.   Analysis

Pursuant to Fed. R. Civ. P. 23(a), class representation is permissible if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Further, a class action can be maintained if all above requirements are satisfied, and, as relevant to this case, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Appellants take issue with several of the District Court's rulings as to these requirements. First, Appellants object to the denial of certification as to their state law consumer fraud claims. Specifically, Appellants contend that the District Court should not have engaged in a choice of law analysis at the certification stage. Appellants urge alternatively that the choice of law ruling was incorrect. As a further alternative, Appellants argue that even if the local laws of 42 states applied to the state claims, class treatment was warranted because the laws can be grouped for litigation purposes.

Separately, Appellants argue that certification should have been granted as to their claims of unjust enrichment, because common issues of fact predominated. Appellants also argue that the District Court erred in denying certification to the Debt Collector Victim Class. Finally, Appellants object to the dismissal of Denise Cassese's individual claim. We address these arguments in turn.

A. State Law Consumer Fraud Claims

1. Choice of Law Analysis Was Not Premature

As noted above, the District Court sought to determine which state law would govern the state consumer fraud claims for the proposed nationwide Post-EOB Billing Class and Anthem BCBS FEHB Program Class. Appellants argue that the District Court should not have engaged in this choice of law analysis at the class certification stage, citing *Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) (en banc). There, we noted that "many courts find it inappropriate to decide choice of law issues incident to a motion for class

certification." *Id.* at 309 (citation and quotation marks omitted).

However, *Sullivan* concerned settlement classes, which do not pose the types of management problems that can arise in a nationwide class action trial. We specifically stated in *Sullivan*:

> Because we are presented with a settlement class certification, we are not as concerned with formulating some prediction as to how [variances in state law] would play out at trial, for the proposal is that there be no trial. As such, we simply need not inquire whether the varying state treatments of indirect purchaser damage claims at issue would present the type of 'insuperable obstacles' or 'intractable management problems' pertinent to certification of a litigation class.

*Id.* at 303-04. We recognized that "there may still be circumstances . . . where '[i]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance.'" *Id.* at 304 n.28 (citation omitted).

The nationwide classes proposed by Appellants were for purposes of trial, not settlement. Under such facts, it was reasonable for the District Court to inquire at the certification

stage as to whether the classes posed "intractable management problems" for trial. *See id.* at 304. Indeed, we have found error where a District Court failed to do so. *See In re LifeUSA Holding Inc.*, 242 F.3d 136, 147 (3d Cir. 2001) (finding error where the "District Court failed to consider how individualized choice of law analysis of the forty-eight different jurisdictions would impact on Rule 23's predominance requirement . . . ."); *see also Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) ("[B]ecause we must apply an individualized choice of law analysis to each plaintiff's claims . . . the proliferation of disparate factual and legal issues is compounded exponentially.") (internal citation omitted). Thus, it was not an abuse of discretion for the District Court to determine what law would govern the proposed state consumer fraud law claims.

### 2. Choice of Law Analysis Was Not Incorrect

Appellants next assert that the District Court erred in concluding that the laws of putative class members' home states controlled the state law claims. In its analysis, the District Court applied the choice of law rules of the forum state, New Jersey, to determine the controlling law. New Jersey has adopted "the most significant relationship" test set out in the Restatement (Second) of Conflict of Laws. *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 459-60 (N.J. 2008). Under this test, courts first inquire whether an actual conflict exists between the laws of the potentially relevant states. *Id.* at 460. The parties do not dispute that an actual conflict exists between New Jersey consumer fraud law and the consumer protection laws of other states. With an actual conflict, courts must then determine, by reference to the

10

Restatement, which state has the most significant relationship to the case and parties. *Id*. at 461. The District Court found that there are two distinct provisions in the Restatement which could apply in this case.

First, § 148(1) of the Restatement applies "[w]hen the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were *made and received* . . . ." (emphasis added). When this provision is satisfied, the law of the state where the representations were both made and received controls. The District Court held that § 148(1) governed the case because Quest's misrepresentations (demand for payment in bills) were both made and received in the putative class members' home states. The Court apparently found that while certain of the misrepresentations were sent from Quest's headquarters in New Jersey, they were nonetheless "made" when they were "read at their destination – the customer's home state . . . ." (App. 28.) This reasoning was identical to that in the District Court's denial of Appellants' first motion for class certification, which was not appealed, *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 462-63 (D.N.J. 2009) ("*Agostino I*").

This reasoning has since been rejected by our Court. In *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 208 (3d Cir. 2013) we held that "[c]onstruing the location to which a representation is 'directed' to be the same in which one is 'made'—as opposed to the location from which the representation emanated—would render meaningless the Restatement drafters' careful distinction between 'made' and 'received.'" We specifically cited *Agostino I* as an instance in

11

which such an incorrect reading had occurred. *Id*. Thus, both parties here agree that § 148(1) of the Restatement (Second) of Conflict of Laws does not apply.

When the misrepresentations were not made and received in the same state, the proper choice of law analysis instead involves § 148(2) of the Restatement, which uses six factors to determine the state with the most significant relationship to the case. Those factors are as follows:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148(2). While the District Court did not have the benefit of *Maniscalco* at the time of its ruling, it actually *did* consider the appropriate analysis under § 148(2) as an alternative holding, and maintained that these factors still weighed in favor of using the law of individual class members' states. The Court held that the class members each paid money in their home states

12

in reliance on the Quest bill (factor a), received the bill in their own states (factor b), presumably obtained lab services in their home states (factor e), and Quest was expected to render performance in their home states (factor f). The Court held that factor (d), the residence of all parties, was neutral. Finally, the District Court found that factor (c), the place where the defendant made the representations, New Jersey, was not enough to overcome the remaining factors' favoring the use of class members' home state consumer fraud law.

While we agree with Appellants that the District Court erred in weighing certain of the factors,[3] its analysis generally comports with our reasoning in *Maniscalco*. In that case, a plaintiff sought to bring a class action pursuant to New Jersey law, but the district court held that the law of plaintiff's residence, South Carolina, applied instead. We affirmed, finding that factors (a) and (b), where the plaintiff acted in reliance and where he received the representations, weighed "strongly in favor of applying South Carolina law." 709 F.3d at 208. Factor (e), the location of a tangible thing, weighed in favor of South Carolina law, because the case concerned a defective printer purchased in that state. Factor (f) was inapplicable because there was no contract. We held that factor (d), the location of all parties, weighed slightly in favor

---

[3] Specifically, factor (e) is irrelevant to the case as it only concerns a "tangible thing which is the subject of the transaction," and there was no tangible thing at issue here, only lab testing services. Further, factor (f) is also inapplicable as it only concerns rendering "performance under a contract which he has been induced to enter," and Appellants entered no contract.

13

of South Carolina law, given that "[t]he domicil, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant." Restatement (Second) of Conflict of Laws § 148 cmt. i. We went on to note the further commentary in the Restatement that "[i]f any two of the above-mentioned contacts, apart from the defendant's domicil, state of incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues." *Maniscalco*, 709 F.3d at 209 (quoting Restatement (Second) of Conflict of Laws § 148 cmt. j).

Here, similar to *Maniscalco*, factors (a) and (b), where the plaintiff acted in reliance and where he received the representations, weigh in favor of applying the laws of putative class members' home states. In addition, factor (d), the residence of all parties, also weighs in favor of class members' home state law, given that the domicil of the plaintiff is regarded by the Restatement as more important than that of the defendant. *See* Restatement (Second) of Conflict of Laws § 148 cmt. i.

Also similar to *Maniscalco*, only factor (c), where the representations were made, weighs in favor of applying New Jersey law. As we held in *Maniscalco*, "[n]othing else about the relationship between the parties, other than the fortuitous location of [the defendant's] headquarters, took place in the state of New Jersey. [Plaintiff's] home state, in which he received and relied on [the defendant's] alleged fraud, has the 'most significant relationship' to his consumer fraud claim." *Maniscalco*, 709 F.3d at 208-09. The same conclusion applies here.

14

Finally, in *Maniscalco* we noted that the § 148(2) factors are to be construed in light of the principles set forth in § 6 of the Restatement, which include "(1) the interests of interstate comity, (2) the interests of the parties, (3) the interests underlying the field of tort law, (4) the interests of judicial administration, and (5) the competing interests of the states." *Id*. at 207. We found that, on balance, these factors also weighed in favor of plaintiff's home state law. *Id*. at 209-10. Here, the principles in § 6 of the Restatement apply with equal force in favor of class members' home state laws.

In *Maniscalco* we concluded that under the Restatement, the law of South Carolina, as plaintiff's home state, applied to the action. While there are some small differences between this case and *Maniscalco*, none are dispositive. That case controls our analysis here and confirms that the laws of class members' home states apply to their state law claims for the Post-EOB Billing Class and Anthem BCBS FEHB Program Class.

3. Proposed Grouping of State Laws

Appellants next contend that even if each class member's home state law controlled their claims, the District Court erred in finding such claims impractical for class treatment. Appellants urged that the state consumer fraud statutes should be grouped into two categories for the purposes of litigation, those which proscribe (1) "unfair or deceptive" conduct (similar to the Federal Trade Commission Act), and (2) those that prohibit false or misleading conduct. (Appellants' Opening Br. at 32.) Appellants again rely on *Sullivan* where we endorsed the general procedure of grouping multiple state laws into a few categories for the

15

purposes of class litigation. There we stated that, "[w]e [have] emphasized our willingness to certify nationwide classes where differences in state law fell 'into a limited number of predictable patterns,' and any deviations 'could be overcome at trial by grouping similar state laws together and applying them as a unit.'" 667 F.3d at 301.

The District Court took note of the grouping proposal by Appellants and found it wanting. The Court noted that Appellants' analysis consisted "solely" of citation to, and brief discussion of one district court case which followed such a procedure, and an exhibit setting forth the National Consumer Law Center's 2009 analysis of various state consumer fraud statutes. (App. 37.) The District Court noted that "[n]o effort has been made to demonstrate how Plaintiffs' claims of deception through overbilling could be proven under the statutes' varying elements of reliance, state of mind, and causation, to name a few. In other words, Plaintiffs have proposed two groups, but have not demonstrated how this grouping would apply to the facts and issues presented by this case . . . ." (*Id.*) Plaintiffs also provided no indication as to how the jury could be charged in some coherent manner relative to the proposed grouping. The District Court concluded that plaintiffs simply had "not met [their] burden" of demonstrating that grouping was warranted or workable. (App. 38.)

We agree with the District Court and conclude that while grouping, in general, may be a permissible approach to nationwide class action litigation, in this case Appellants did not provide enough information or analysis to justify the certification of the classes they proposed. For example, in *In re Prudential*, we noted that the grouping proposal there consisted of a "series of charts setting forth comprehensive

16

analyses of the various states' laws potentially applicable to their common law claims." 148 F.3d 283, 315 (3d Cir. 1998) (internal quotation marks omitted). Such in-depth treatment justified the District Court's decision to group state laws in that case, but is lacking here.

In addition, Court of Appeals decisions cited in *Sullivan* explicitly recognized that plaintiffs face a significant burden to demonstrate that grouping is a workable solution. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004) ("The burden of showing uniformity or the existence of only a small number of applicable standards (that is, 'groupability') among the laws of the fifty states rests squarely with the plaintiffs.") (abrogated on other grounds); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) ("[T]o establish commonality of the applicable law, nationwide class action movants must creditably demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not present insuperable obstacles.'").

We agree with the District Court that Appellants have failed to provide a sufficient, or virtually any, analysis describing how the grouped state laws might apply to the facts of this case. They assert only that the differences between the state laws within each group are "insignificant or non-existent." (Appellants' Opening Br. at 27.) As the District Court held, Appellants must do more than provide their own *ipse dixit*, citation to a similar case, and a generic assessment of state consumer fraud statutes, to justify grouping. Thus, it was not an abuse of discretion for the District Court to find that Appellants had not carried their burden to show that grouping was workable, and that, consequently, the variations in state laws precluded the proposed groups. We also find no abuse of discretion in the

17

Court's final conclusion that class litigation involving dozens of state consumer fraud laws was not viable and that common facts and a common course of conduct did not predominate. We therefore affirm the denial of certification of the Post-EOB Billing Class and the Anthem BCBS FEHB Class, as to the state law consumer fraud claims.

## B. Unjust Enrichment Claim

Next, Appellants object to the District Court's denial of certification to the Post-EOB Billing Class and the Anthem BCBS FEHB Program Class, as to their unjust enrichment claims. "[A]n essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012). This is distinct from the separate requirement under Rule 23(b)(3), that "questions of law or fact common to class members [must] predominate over any questions affecting only individual members . . . ." Thus, "the ascertainability requirement focuses on whether individuals fitting the class definition may be identified without resort to mini-trials, whereas the predominance requirement focuses on whether essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence." *Hayes*, 725 F.3d at 359. Here, the District Court denied certification as to the unjust enrichment classes because it found both the predominance and ascertainability requirements were not satisfied.

Concerning its ascertainability analysis, the Court found that "implicit in the class definition must be the fact of harm, that is, the class must consist of those above-mentioned

Quest patients who *wrongfully* sustained a loss by paying the bill. Otherwise, a class of persons seeking relief simply does not exist."[4] (App. 44.) The Court concluded that determining membership in the class would require individualized analyses into whether each putative class member was wrongfully harmed, such that the class could not be readily ascertained.

While neither party notes this, the District Court's analysis conflated ascertainability with the predominance inquiry.[5] The Court seemed to find that the class definitions incorporated the causes of action, such that ascertaining a class was complicated by the evidence required to prove a legal claim. Specifically, the District Court was focused on

---

[4] The ascertainability analysis was undertaken in the context of Appellants' RICO claims, and was incorporated in the unjust enrichment discussion.

[5] Predominance and ascertainability are separate issues. Our cases that have addressed ascertainability have focused on whether objective records could readily identify class members. For instance, in *Marcus*, we were concerned with "serious ascertainability issues" because of BMW's potential difficulty in determining which customers purchased vehicles that were factory-equipped with the Bridgestone tires at issue. 687 F.3d at 593-94. Similarly, in *Carrera v. Bayer Corporation*, we found that a class of diet-supplement purchasers could not be ascertained because, (1) there was no indication that retailer records could be used to identify class members, and (2) the use of affidavits would prevent Bayer from challenging class membership. 727 F.3d 300, 309 (3d Cir. 2013)

the individualized proof required to show an unjust enrichment claim, as an obstacle to class certification, a determination which falls squarely under the predominance analysis, to which we now turn.

On this issue the District Court referred to several factual scenarios illustrated by Quest's expert that would lead to ostensible overbilling, but not necessarily unjust or fraudulent overbilling. On appeal, Appellants do not dispute Quest's claim that many patients who were initially overbilled by Quest subsequently received refunds of their incorrect charge. However, these patients would still be class members, since they were billed and paid an amount in excess of an EOB provided to Quest.

In sum, the District Court properly found that individual inquiries would be required to determine whether an alleged overbilling constituted unjust enrichment for each class member. Such specific evidence is incompatible with representative litigation. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("[A] common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."); *Marcus*, 687 F.3d at 604 (finding reversible error where district court failed to consider that allegedly defective tires can go flat "for myriad reasons," requiring an examination of each class member's tire, and "[t]hese individual inquiries are incompatible with Rule 23(b)(3)'s predominance requirement"). Accordingly, the denial of certification of the Post-EOB Billing Class and the Anthem BCBS FEHB Program Class, as to the unjust enrichment claim, was not an

abuse of discretion, and we will affirm the District Court's judgment.

C. Debt Collector Victim Class

Appellants next urge that the District Court erred in denying certification to the Debt Collector Victim Class. As noted above, Appellants limit their appeal for this class to their claim of an FDCPA violation. Appellants have also abandoned the first component of the class and instead only appeal the denial of certification as to the second, which includes persons who received written demands from debt collectors retained by Quest that added interest, charges or penalties in excess of the original amount billed by Quest. Appellees contend that Appellants cannot now seek this narrowed class because it was not sought below.

We will not address the issue of waiver because, even assuming, *arguendo*, that this argument was not waived, the narrowed Debt Collector Victim Class could not be certified. The District Court denied certification as to the second prong of the class because Richard Grandalski, the only proposed representative class member, is not an adequate class representative for the FDCPA violation claim, as the class definition includes only those who received a *written* demand for payment from a debt collector. As the Court found, Grandalski admitted in a deposition that he "never received anything in written communications from Quantum [the debt collector]. . . ." (App. 65.) Rather, "Grandalski's deposition testimony indicates that Quantum contacted him by telephone." (*Id.*) The Court ruled that, because his claim was unlike that of the class he was supposed to represent, certification was denied. *See Hayes,* 725 F.3d at 360

21

("[W]here the lead plaintiff does not fit the class definition, the class may not be certified.").

Appellants urge that this ruling constitutes a clear factual error because the District Court later granted Grandalski summary judgment as to his individual claim, finding that he had in fact shown an FDCPA violation. On this issue, Appellants point to the Court's statement that "Quantum dunned Mr. Grandalski" on two separate occasions, and seemingly contend that this is a finding that Grandalski was billed in writing. (App. 87 n.4.) However, the cited statement does not reflect a conclusion that this "dunning" was in writing. *Cf. In re Hechinger Inv. Co. of Del., Inc.*, 320 B.R. 541, 549 (Bankr. D. Del. 2004) ("[T]here were no letters, telephone calls, or any attempts whatsoever on the part of Defendant to apply pressure or to 'dun' Debtor to encourage more prompt payment . . . .").

Further, Appellants do not challenge or attempt to explain Grandalski's testimony, cited in the denial of class certification, that he received no written communications from a debt collector, and that instead he communicated with them by phone. Even after full discovery, no party has produced any such written letter. We cannot conclude that the Court made a clear error in finding that Grandalski had received no written demands, and therefore was not a suitable class representative. Thus, we will affirm the denial of certification to the second prong of the Debt Collector Victim class, as to the FDCPA claim.

D. Summary Judgment as to Denise Cassese

Lastly, following denial of class certification, Appellant Denise Cassese proceeded individually with her claims. Summary judgment was granted to Appellees and denied as to Cassese on her various claims. Appellants object to only one aspect of that ruling, Cassese's claim under New York General Business Law § 349. Under that law, Cassese was required to show that (1) Quest's conduct was consumer-oriented, (2) its conduct was materially deceptive, and that (3) she was injured thereby. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995).

The District Court held that Cassese had not produced evidence of any pecuniary injury, and the only claim of non-pecuniary harm came in one line of her deposition transcript where she was asked if she had been damaged by Quest. She responded: "Just basically harassed and billed and talked to them, and I think I paid them." (App. 706) The Court found that this bare mention of being "harassed and billed" did not constitute a showing of non-pecuniary harm. (App. 74.)

On appeal, Appellants challenge only the District Court's conclusion that Cassese had not shown evidence of non-pecuniary harm. Appellants point out that non-pecuniary harm, such as emotional distress, is cognizable under New York General Business Law § 349. *See Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 264 (E.D.N.Y. 2012); *Oswego*, 85 N.Y.2d at 26 ("[A] plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm.").

23

However, given the posture of the case on summary judgment, we agree with the District Court that one bare mention of being "harassed and billed," without more, is not evidence from which a reasonable jury could conclude that Cassese suffered actual, though non-pecuniary, harm. She provided no facts, and nothing beyond a single word, that could allow a jury to infer that she suffered any actual harm because of Appellees' actions. Accordingly, summary judgment was appropriately granted to Appellees and against Cassese on this claim.

## IV.    Conclusion

For the foregoing reasons we will affirm the judgment of the District Court.