NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3791
_____

IN RE: CLASS 8 TRANSMISSION INDIRECT PURCHASER
ANTITRUST LITIGATION

RYAN AVENARIUS, on behalf of themselves and all others similarly situated;
BIG GAIN, INC.; CARLETON TRANSPORT SERVICE; JAMES CORDES, on
behalf of Cordes Inc.; MEUNIER ENTERPRISES LLC; PAUL PROSPER;
RODNEY E. JAEGAR; PURDY BROTHERS TRUCKING CO. INC.;
TC CONSTRUCTION CO. INC.; PHILLIP E. NIX,

                                                          Appellants
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D. Del. No. 1-11-cv-00009)
District Judge: Honorable Sue L. Robinson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 13, 2016
_____

Before: CHAGARES, GREENAWAY, JR., and RESTREPO, *Circuit Judges*.

(Filed: February 9, 2017)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

This appeal arises from a putative antitrust class action alleging a conspiracy among manufacturers of heavy-duty trucks and a supplier of transmissions to maintain the supplier's monopoly in the heavy-duty truck transmissions market. Appellants allege that this conspiracy resulted in their paying artificially inflated prices for trucks that contained the transmissions at issue. After Appellants moved for class certification, the District Court found, *inter alia*, that they failed to meet the requirement in Rule 23(b)(3) of the Federal Rules of Civil Procedure that common questions predominate over individual questions in order for the class to be certified. We agree with the District Court that Appellants have failed to demonstrate that class-wide evidence could prove antitrust impact, and therefore Appellants have not established that common questions will predominate. However, we conclude that the District Court erred in dismissing Appellants' individual claims and will therefore vacate that dismissal and remand to the District Court.

## I.    BACKGROUND

This action is driven by Class 8 heavy-duty truck transmissions. Class 8 is the heaviest truck class. Class 8 trucks can be divided into subcategories, including linehaul vehicles (e.g., tractor-trailers and long-haul trucks) and performance vehicles (e.g., heavy construction trucks such as dump and cement trucks).

Manufacturers of Class 8 trucks take orders from customers to build trucks customized to the customers' needs and then purchase component parts from suppliers. Here, Appellees are four manufacturers of Class 8 trucks and Eaton Corporation, the

2

primary supplier of Class 8 transmissions.[1]  Purchasers of Class 8 trucks consult

"databooks," which list the truck manufacturer's standard and non-standard component

offerings, to choose the specific component parts they desire.  Appellants are "indirect"

purchasers of Class 8 transmissions insofar as they purchased trucks containing Eaton

transmissions from authorized agents or dealers of the truck manufacturers.[2]

In their Third Amended Complaint, Appellants allege violations of various state

antitrust and unfair competition laws in a total of twenty-one different states.  Appellants

allege that the truck manufacturers conspired among themselves and with Eaton to secure

Eaton's monopoly in the Class 8 truck transmission market by entering individually into

long-term agreements with Eaton in the early 2000s.  Under these "de facto exclusive

dealing" agreements, the truck manufacturers received lucrative loyalty rebates from

Eaton if they purchased a certain percentage—over ninety percent—of Eaton

transmissions for their Class 8 manufacturing needs.  App. 137 ¶ 68; 139 ¶ 73.

Appellants allege that these agreements were part of a conspiracy that was intended to,

and did in fact, foreclose a transmissions manufacturer competitor, ZF Meritor, from over

---

[1] Appellee truck manufacturers are:  Daimler Trucks North America LLC (f/k/a
Freightliner LLC); Navistar International Corporation, Inc. (f/k/a International Truck &
Engine Corp.); PACCAR Inc., through its Kenworth Truck Company and Peterbilt
Motors Company divisions; and Volvo Trucks North America and its sister company
Mack Trucks, Inc.

[2] A separate putative class action was filed on behalf of "direct purchasers"—i.e., those
who purchased trucks directly from truck manufacturers.  The District Court dismissed
the direct purchasers' motion for class certification for lack of Article III standing; we
recently reversed.  *Wallach v. Eaton Corp.*, 837 F.3d 356, 2016 WL 4791849 (3d Cir.
Sept. 14, 2016).

ninety percent of sales in the Class 8 linehaul transmissions market and from even entering the Class 8 performance transmissions market.[3]  According to Appellants, as a result of the agreements and market competition foreclosure, they paid supra-competitive prices for Class 8 trucks and therefore the transmissions.

Appellants moved for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The District Court concluded, *inter alia*, that Appellants failed to establish the threshold Rule 23(b)(3) predominance requirement that common evidence could prove that all or nearly all of the proposed class members (i.e., indirect purchasers) paid a higher price than they would have absent the alleged conspiracy.  The District Court then dismissed the action for lack of a case or controversy as required by Article III.  Appellants timely appealed.

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 15 U.S.C. §§ 4 and 15, and 28 U.S.C. §§ 1331 and 1337.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

"We review a class certification order for abuse of discretion, which occurs if the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law[,] or an improper application of law to fact."  *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358 (3d Cir. 2015) (quoting *Grandalski v. Quest Diagnostics*

---

[3] In 2006, ZF Meritor sued Eaton for antitrust violations and prevailed.  *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012) (affirming the jury's verdict against Eaton).

*Inc.*, 767 F.3d 175, 179 (3d Cir. 2014)). We review *de novo* the legal standard applied by a district court. *Id.*

### III. ANALYSIS

#### A. The District Court's Denial of Class Certification on Predominance Grounds

Appellants argue that the District Court abused its discretion by failing to conduct a "rigorous analysis" of their arguments and evidence supporting their motion for class certification. Appellants' Br. at 28; *see In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) ("Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982))). "[T]o certify a class under Rule 23(b)(3), a plaintiff must satisfy both the general class action prerequisites [of Rule 23(a)] . . . and the additional requirements of predominance and superiority [of Rule 23(b)(3)]." *In re K-Dur Antitrust Litig.*, 686 F.3d 197, 219 (3d Cir. 2012), *cert. granted and judgment vacated on other grounds by Upsher-Smith Labs. v. Louisiana Wholesale Drug Co.*, 133 S. Ct. 2849 (mem.) (2013). Here, because the Rule 23(a) and Rule 23(b)(3) requirements are conjunctive, we need only review the District Court's predominance analysis to conclude that the District Court properly denied Appellants' motion for class certification.

"[B]efore a class is certified under [Rule 23(b)(3)], a district court must find that 'questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036,

5

1045 (2016) (quoting Fed. R. Civ. P. 23(b)(3)). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Id.* (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, at 196–97 (5th ed. 2012)). Rule 23(b)(3) requires that "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (quoting Rubenstein, § 4:49, at 195–96). A court's Rule 23(b)(3) analysis "necessarily entails some analysis of whether the proposed class-wide evidence will actually be sufficient for the class to prevail on the predominant issues in the case." *Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298, 304-05 (3d Cir. 2016).

"In an antitrust class action, 'impact'"—i.e., individual injury—"often is critically important for the purpose of evaluating Rule 23(b)(3)'s predominance requirement because it is an element of the claim that may call for individual, as opposed to common, proof." *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 262 (3d Cir. 2016) (quoting *Hydrogen Peroxide*, 552 F.3d at 311). Although plaintiffs need not prove the element of impact at the certification stage, "[a] district court must thus undertake a 'rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove impact at trial.'" *Id.* (quoting *Hydrogen Peroxide*, 552 F.3d at 312).

As applied to Appellants' theory of antitrust impact on their proposed class of indirect purchasers, Rule 23(b)(3)'s predominance element required that Appellants

6

demonstrate that common evidence could prove: (1) Eaton overcharged the truck manufacturers for Class 8 transmissions; (2) the truck manufacturers passed on this overcharge to direct purchasers; and (3) direct purchasers passed on the overcharge to Appellants.

Appellants primarily relied on the expert report and testimony of Dr. Russell Lamb, an economist, who analyzed each requirement through: (1) an "overcharge" regression; (2) a "direct pass-through" regression; and (3) an "indirect pass-through" regression.

Appellants contend that the District Court abused its discretion when it considered certain "real-world [factors] surrounding th[e] complicated market" of Class 8 trucks, App. 32, in its predominance analysis because such factors would be the same in both the actual and but-for-illegal-conduct worlds. Specifically, the District Court noted: (1) Class 8 trucks are "unique and highly customized for use in different applications," App. 29; (2) "the complex distribution chain frustrates the process of determining the amount of pass-through on a transmission based on the price of a truck," App. 30; and (3) eight of the eleven state classes originally proposed by Appellants contained examples of unique sales incentives, such as increased trade-in value, preferred buy-back terms, or special financing, which may not be able to be reflected on an invoice or which may result in benefits exceeding the alleged overcharge.

We conclude the District Court properly considered these factors as to individual class members, including whether and to what extent they suffered economic loss (i.e., antitrust impact) as a result of alleged conspiracy. *See Hydrogen Peroxide*, 552 F.3d at

7

311 (finding in its predominance analysis that a court must "formulate some prediction as to how specific issues will play out" (internal quotation marks and citations omitted)). The District Court properly exercised its discretion in undertaking a qualitative assessment of the characteristics shared by all indirect purchase transactions of Class 8 trucks against the many individual factors in the real-world market. *See Neale*, 794 F.3d at 371 ("[P]redominance involves a qualitative assessment of common versus individualized questions." (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1196 (2013))).

Appellants next argue that the District Court abused its discretion (1) by faulting their expert economist's class-wide impact analysis for excluding certain data and (2) by failing to consider in its "rigorous analysis" their expert's revised rebuttal report that included additional data.

As to Dr. Lamb's "overcharge" regression, the District Court found that his original analysis did not test class-wide impact because it:  (1) was based solely on a portion of linehaul transmission sales data, excluding performance transmission sales, which comprised nearly half of Eaton's transmissions sold during the relevant time period; and (2) excluded data from two truck manufacturers, whose sales comprised over forty percent of the linehaul trucks. Although Appellants offer explanations for Dr. Lamb's exclusion of certain sales data, the District Court did not abuse its discretion in assessing whether the "*available evidence* and the method or methods by which plaintiffs propose to use the evidence" could prove class-wide impact. *Hydrogen Peroxide*, 552 F.3d at 312 (emphasis added); *see Harnish*, 833 F.3d at 304-05 (providing that the

8

predominance analysis "necessarily entails some analysis of whether the proposed class-wide evidence *will actually be sufficient* for the class to prevail on the predominant issues in the case" (emphasis added)). Moreover, in an attempt to address issues relating to the adequacy of proposed class representatives, Dr. Lamb in his rebuttal report excluded sales data from an additional manufacturer—further narrowing the field of data upon which he relied to show class-wide impact.

As to Dr. Lamb's indirect pass-through analyses, his original analysis was based on less than one percent of total truck sales from the putative indirect purchaser class—and based on data from two dealers in California. Appellants do not dispute this. Instead, they rely on Dr. Lamb's revised rebuttal report, which included additional data from a total of seven states—thereby accounting for approximately two percent of all transactions. The District Court's conclusion based on Dr. Lamb's original report was not an abuse of discretion: given that Appellants were seeking to certify a class across several states covering hundreds of thousands of sales, the District Court properly concluded that Dr. Lamb's analysis was insufficient to demonstrate class-wide impact. Nor did the District Court err in not assessing whether the revised report covering approximately two percent of transactions was sufficient, given the District Court's conclusions that Dr. Lamb's revised report could not cure deficiencies relating to predominance and adequacy of the proposed class representatives.[4]

---

[4] Appellants argue that the District Court overlooked Dr. Lamb's revised expert report, which was submitted with Appellants' Reply Brief in support of their Motion for Class Certification. Whether or not the District Court considered the revised report, our

In sum, we are satisfied that the District Court procedurally and substantively conducted a "rigorous analysis" of Appellants' theory of class-wide impact and available evidence, and that the District Court did not abuse its discretion in its analysis. Because we affirm the District Court's denial of Appellants' motion for class certification on predominance grounds, we need not reach Appellants' challenges to the District Court's findings as to the adequacy of the proposed class representatives or the substitution of proposed class representatives.

## B. The District Court's Dismissal of the Entire Action

Although we agree with the District Court that the Rule 23(b)(3) predominance inquiry was a sufficient ground to deny Appellants' motion for class certification, we conclude the District Court erred by dismissing Appellants' individual claims.

The District Court reasoned that "because the proposed class lacks representation, the case does not present a case or controversy under Article III." App. 34. However, "[t]here is [] no case or controversy, and a suit becomes moot, 'when . . . the parties lack a legally cognizable interest in the outcome.'" *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (quoting *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013)).

Here, in each of their complaints, Appellants explicitly brought their claims "on behalf of themselves," and on behalf of the putative indirect purchaser class. (D.C. Civ. No. 1-11-cv-00009, Dkt. No. 1 at 1, Dkt. No. 34 at 1, Dkt. No. 68 at 1); App. 122. Prior to the District Court's addressing Appellants' motion for class certification, the Court

conclusion that the revised report does not cure deficiencies in Appellants' predominance showing remains unchanged.

10

concluded that Appellants' individual state antitrust claims should not be subject to dismissal. Then, as a result of, *inter alia*, predominance issues, the District Court improperly ruled that the entire action should be dismissed despite its earlier ruling that Appellants' individual claims survived. Therefore, we will vacate the portion of the District Court's order dismissing Appellants' individual claims and remand to the District Court for further proceedings on these claims.[5]

## IV.    CONCLUSION

For the foregoing reasons, we will affirm in part and vacate in part the District Court's order and remand for proceedings consistent with this opinion.

---

[5] Appellants also challenge the District Court's decision made in a discovery hearing to not compel production of sales data for sales made after Appellants' original complaint was filed in March 2010. We review discovery decisions for abuse of discretion, which requires a showing of "actual and substantial prejudice." *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 409 (3d Cir. 2016) (quoting *Cyberworld Enter. Tech., Inc. v. Napolitano*, 602 F.3d 189, 200 (3d Cir. 2010)). Appellants have not shown how data for post-March 2010 sales would have cured the deficiencies identified by the District Court in Dr. Lamb's analysis. Therefore, Appellants have not demonstrated that the District Court abused its discretion.

11