**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2474
_____

GREGORY VIZIRGIANAKIS; PHONG THOMAS DINH; JAMSHID KHODAVANDI

v.

AETERNA ZENTARIS, INC.; JUERGEN ENGEL; DAVID A. DODD; PAUL
BLAKE; NICHOLAS J. PELLICCIONE

Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 3:14-cv-07081)
District Judge:  Hon. Peter G. Sheridan

Submitted under Third Circuit L.A.R. 34.1(a)
April 2, 2019

Before:  CHAGARES, HARDIMAN, and SILER, JR.,* Circuit Judges

(Filed:  May 30, 2019)

_____

OPINION+
_____

---

* The Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Court of
Appeals for the Sixth Circuit, sitting by designation.

+ This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

SILER, Circuit Judge.

Pursuant to Federal Rule of Civil Procedure 23(f), defendants Aeterna Zentaris, Inc., and its named former employees,[1] appeal the district court's order granting class certification in this securities action. We will affirm the decision of the district court.

I.

We write for the parties and relate only the necessary facts. In 2009, the biopharmaceutical company Aeterna acquired the rights to AEZS-130, a drug in development it sought to have approved for commercialization by the Food and Drug Administration ("FDA"). To this end, Aeterna agreed to continue an ongoing study of the drug according to the terms of a Special Protocol Assessment ("SPA"), an agreement between Aeterna and the FDA regarding how the study should be completed to show the drug's safety and efficacy.

According to the complaint, Aeterna issued numerous press releases and other statements indicating that the study showed the drug was effective in accordance with the protocol agreed to by the FDA in the SPA. Based on the strength of the "successful" study, Aeterna sold nearly $75 million of its common stock to the investing public.

In reality, says the complaint, AEZS-130 failed to show efficacy. And in November 2014, the FDA denied Aeterna's application to market AEZS-130 publicly,

---

[1] These former employees are: David A. Dodd, Juergen Engel, Nicholas J. Pelliccione, and Paul Blake.

because the planned analysis of Aeterna's "pivotal trial did not meet its stated primary efficacy objective as agreed to in the Special Protocol Assessment agreement letter between [Aeterna] and the FDA."

The current action was filed by Aeterna shareholders. The class action complaint alleges Aeterna violated Section 10(b) of the Exchange Act and Rule 10b-5 by carrying out a plan to deceive the investing public and cause class members to purchase Aeterna stock at artificially inflated prices. It further alleges that several former Aeterna employees are liable under Section 20(a) of the Exchange Act by virtue of their influence and control over the false and misleading statements by Aeterna. The district court granted plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23(b)(3). Pursuant to Rule 23(f), Aeterna timely appealed.

## II.[2]

"We review a class certification order for abuse of discretion." *Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 358 (3d Cir. 2015) (quoting *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 179 (3d Cir. 2014)). We bear in mind "[t]he trial court, well-positioned to decide which facts and legal arguments are most important to each Rule 23 requirement, possesses broad discretion to control proceedings and frame issues for consideration under Rule 23." *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 310 (3d Cir. 2008) (citation omitted).

---

[2] The district court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1292(e) and Rule 23(f).

III.

In a § 10(b) private action, a plaintiff must prove reliance upon the alleged misrepresentation or omission. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008) (citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)). The district court found that plaintiffs could proceed under a fraud-on-the-market theory of reliance. This theory "accords plaintiffs in Rule 10b-5 class actions a rebuttable presumption of reliance if plaintiffs bought or sold their securities in an efficient market." *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1419 n.8 (3d Cir. 1997) (internal quotation omitted).

Here, plaintiffs provided an expert report completed by Dr. Adam Werner to prove market efficiency; the report relied on four dates on which information related to the development of AEZS-130 was disseminated to conclude that Aeterna stock reflected publicly available information. On appeal, Aeterna does not contest that plaintiffs raised the presumption of an efficient market, and therefore class-wide reliance. It argues the district court erred in finding that it had not rebutted the presumption.

Aeterna's hired expert, Dr. David Tabak, responded to the declaration of plaintiffs' expert, pointing out that Dr. Werner had not proven—to a 95% confidence level—that the alleged misrepresentations made on August 30, 2011 impacted the price of Aeterna's common stock. The district court found this evidence insufficient to rebut the presumption. It aptly noted that plaintiffs do not have the burden to prove price impact (or lack thereof), so it was not surprising that their expert's report did no such thing. And even were plaintiffs' study attempting to demonstrate a price impact, the

4

district court reasoned that its failure to do so is not necessarily proof of the opposite. This conclusion is consistent with the opinion of Dr. Werner and other district courts weighing similar event studies, including two in this circuit. *See West Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731, 2016 WL 4138613, \*14 (E.D. Pa. Aug. 4, 2016) ("[I]t does not necessarily follow from the mere absence of a statistically significant change in the stock price that there was no price impact" (internal quotation omitted)); *City of Sterling Heights Gen. Empl. Ret. Syst. v. Prudential Finan., Inc.*, No. 12-5275, 2015 WL 5097883, \*12 (D.N.J. Aug. 31, 2015) (failure of statistical significance on one of six alleged misstatement dates did not show a lack of price impact sufficient to rebut presumption of reliance).

Further, Dr. Werner found abnormal stock return to a 95% confidence level for the other three events in his study, one of which was Aeterna's June 26, 2012 representation regarding AEZS-130. Dr. Tabak's contention that plaintiffs' legal theory precludes them from relying on the 2012 representation is a legal conclusion, which the district court could reject. *See Berckeley Inv. Grp. Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) (explaining that "an expert witness is prohibited from rendering a legal opinion"). Dr. Tabak's contention that the 2012 representation did not provide any new, market-relevant information conflicts with Dr. Werner's opposite conclusion. Weighing conflicting expert testimony is a normal task of the district court at the certification stage and Aeterna has not shown the district court abused its discretion weighing it here. *See In re DVI, Inc. Sec. Lit.*, 639 F.3d 623, 633 (3d Cir. 2011), *abrogated on other grounds by Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013).

5

Finally, Aeterna misreads the district court opinion when it contends the district court required it to rebut the presumption by proving "with scientific certainty" that the alleged misrepresentation caused no price movement, a burden it deems "impossible" and unknown to science and law. Given that the bulk of the reliance challenge centered on statistical analysis, and a certainty level agreed to by both parties, it is hollow indeed that Aeterna would read the opinion and believe it divorced from this context.

## IV.

In sum, the district court considered the expert report tendered by Aeterna. In light of plaintiffs' expert and caselaw concluding otherwise, it rejected Dr. Tabak's conclusion that lack of price impact was proven by Dr. Werner's failure to prove price impact in his report on market efficiency. The district court also credited Dr. Werner's conclusion that the 2012 statement conveyed new, valuation-relevant information, despite Dr. Tabak's concluding the opposite. Weighing conflicting expert testimony and making factual findings are normal functions of the district court at this stage. *DVI*, 639 F.3d at 633. Aeterna has not shown that either decision was an abuse of discretion.

We will affirm.