**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3050
_____

CRYSTAL BYRD; BRIAN BYRD, Individually, and on
Behalf of all Similarly Situated Persons,
                                              Appellants


v.


AARON'S INC; ASPEN WAY ENTERPRISES INC,
d/b/a Aaron's Sales and Leasing, A Franchisee of
Aaron's Inc.;
DESIGNERWARE LLC; AH & H LEASING LLC,
d/b/a Aaron's Sales and Leasing, a Franchisee of
Aaron's, Inc.;
AMG ENTERPRISES GROUP LLC, d/b/a Aaron's
Sales and Leasing,
a Franchisee of Aaron's, Inc.; ARONA CORPORATION
d/b/a Aaron's Sales
and Leasing, a Franchisee of Aaron's, Inc.; BEAR
RENTAL PURCHASE LTD,
d/b/a Aaron's Sales and Leasing, a Franchisee of
Aaron's, Inc.;
BOXER ENTERPRISE INC, d/b/a Aaron's Sales and

Leasing,
a Franchisee of Aaron's, Inc.; CIRCLE CITY
RENTALS, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.; CMH LEASING
PARTNERS, LLC,
d/b/a Aaron's Sales and Leasing, a Franchisee of
Aaron's, Inc.;
CRAM LEASING, INC., d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;
DC SALES AND LEASE INC, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;
DIRIGO LEASING INC, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;
DPR ALASKA LLC, d/b/a Aaron's Sales and Leasing, a
Franchisee of Aaron's, Inc.;
DPR COLORADO LLC, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;
DW3 LLC, d/b/a Aaron's Sales and Leasing, a
Franchisee of Aaron's, Inc.;
DWC VENTURES LLC, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;
FAIRWAY LEASING LLC, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;
FIVE STAR FINANCIALS LLC, d/b/a Aaron's Sales
and Leasing, a Franchisee of Aaron's, Inc.;
FT GOT THREE LLC, d/b/a Aaron's Sales and Leasing,
a Franchisee of Aaron's, Inc.;
GNS & ASSOCIATES INC, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;

GREAT AMERICAN RENT TO OWN INC, d/b/a
Aaron's Sales and Leasing, a Franchisee of Aaron's, Inc.;
GREEN RIVER CORP, d/b/a Aaron's Sales and Leasing,
a Franchisee of Aaron's, Inc.;
HANSON HOLDING CO, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;
HONEY HARBOR INVESTMENTS LLC, d/b/a
Aaron's Sales and Leasing, a Franchisee of Aaron's, Inc.;
HOWARD RENTS LLC, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;
HPH INVESTMENTS LLC, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;
J&L BEACH ENTERPRISES INC, d/b/a Aaron's Sales
and Leasing, a Franchisee of Aaron's, Inc.;
J.R. RENTS, d/b/a Aaron's Sales and Leasing, a
Franchisee of Aaron's, Inc.;
J.M. DARDEN AND CO, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;
JENFOUR LLC, d/b/a Aaron's Sales and Leasing, a
Franchisee of Aaron's, Inc.;
JENKINS RENTAL LLC, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;
KFJ ENTERPRISES LLC, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;
LIFESTYLE FURNITURE LEASING, d/b/a Aaron's
Sales and Leasing, a Franchisee of Aaron's, Inc.;
LTL INVESTMENTS LLC, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;
MADISON CAPITAL INVESTMENTS INC, d/b/a

3

Aaron's Sales and Leasing, a Franchisee of Aaron's, Inc.;
MKW INVESTMENTS INC, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;
NO THREE PUTTS ENTERPRISES LLC, d/b/a Aaron's
Sales and Leasing, a Franchisee of Aaron's, Inc.;
NW FREEDOM CORP, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;
POMONA LANE PARTNERS LLC, d/b/a Aaron's Sales
and Leasing, a Franchisee of Aaron's, Inc.;
R & DOUBLE K LLC, d/b/a Aaron's Sales and Leasing,
a Franchisee of Aaron's, Inc.;
REBCO INVESTMENTS LLC, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;
REX NEAL INC, d/b/a Aaron's Sales and Leasing, a
Franchisee of Aaron's, Inc.;
ROYAL RENTS INC, d/b/a Aaron's Sales and Leasing,
a Franchisee of Aaron's, Inc.;
ROYAL ROCKET RETAIL LLC, d/b/a Aaron's Sales
and Leasing, a Franchisee of Aaron's, Inc.;
SHINING STAR, d/b/a Aaron's Sales and Leasing, a
Franchisee of Aaron's, Inc.;
SHOWCASE HOME FURNISHINGS INC, d/b/a
Aaron's Sales and Leasing, a Franchisee of Aaron's, Inc.;
SULTAN FINANCIAL CORP, d/b/a Aaron's Sales and
Leasing, a Franchisee of Aaron's, Inc.;
TANGLEWOOD MANAGEMENT LLC, d/b/a Aaron's
Sales and Leasing, a Franchisee of Aaron's, Inc.;
TDS FOODS INC, d/b/a Aaron's Sales and Leasing, a
Franchisee of Aaron's, Inc.;

4

TUR INC, d/b/a Aaron's Sales and Leasing, a Franchisee of Aaron's, Inc.;
WATERSHED DEVELOPMENT CORP, d/b/a Aaron's Sales and Leasing, a Franchisee of Aaron's, Inc.;
WGC LLC, d/b/a Aaron's Sales and Leasing, a Franchisee of Aaron's, Inc.;
JOHN DOES (1-45) AARON'S FRANCHISEES

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 1-11-cv-00101
District Judge: The Honorable Cathy Bissoon

Argued on January 23, 2015

Before: RENDELL, SMITH, and KRAUSE,
*Circuit Judges*

(Filed: April 16, 2015)

Leonard A. Davis, Esq.
Andrea S. Hirsch, Esq.
Herman Gerel
230 Peachtree Street
Suite 2260
Atlanta, GA  30303

R. Daniel Fleck, Esq.
Mel C. Orchard, Esq.
G. Bryan Ulmer, III, Esq.
The Spence Law Firm
15 South Jackson Street
P.O. Box 548
Jackson, WY  83001

Matthew C. Gaughan, Esq.
Arnold Levin, Esq.
Frederick S. Longer, Esq.          [ARGUED]
Levin, Fishbein, Sedran & Berman
510 Walnut Street
Suite 500
Philadelphia, PA  19106

Michelle A. Parfitt, Esq.
Christopher V. Tisi, Esq.
Ashcraft & Gerel
2000 L Street, N.W.
Washington, DC  20036

John H. Robinson, Esq.
Jamieson & Robinson
215 South Grant Street
Casper, WY 82601
          *Counsel for Appellants*

Kristine M. Brown, Esq.          [ARGUED]
William H. Jordan, Esq.
Thomas C. Pryor, Esq.
Jason D. Rosenberg, Esq.
Alston & Bird
1201 West Peachtree Street
One Atlantic Center
Atlanta, GA  30309

Neal R. Devlin, Esq.
Richard A. Lanzillo, Esq.
Knox, McLaughlin, Gornall & Sennett
120 West Tenth Street
Erie, PA  16501

Steven E. Bizar, Esq.
Landon Y. Jones, Esq.
Buchanan Ingersoll & Rooney
50 South 16th Street
Two Liberty Place, Suite 3200
Philadelphia, PA  19102

Mark R. Lane, Esq.
Donald J. McCormick, Esq.
Dell, Moser, Lane & Loughney
112 Washington Place
Two Chatham Center, Suite 1500
Pittsburgh, PA  15219

Timothy N. Lillwitz, Esq.
Todd A. Strother, Esq.
Bradshaw Fowler Proctor & Fairgrave
801 Grand Avenue
Suite 3700
Des Moines, IA  50309

Michael E. Begley, Esq.
Michele L. Braukmann, Esq.
Ross W. McLinden, Esq.
Moulton Bellingham
27 North 27th Street
Crown Plaza, Suite 1900
Billings, MT  59103

James A. McGovern, Esq.
Anthony J. Williott, Esq.          [ARGUED]
Marshall, Dennehey, Warner, Coleman
 & Goggin
600 Grant Street
2900 U.S. Steel Tower
Pittsburgh, PA  15219

Brian M. Mancos, Esq.
Burns White
106 Isabella Street
Four Northshore Center
Pittsburgh, PA  15212
          *Counsel for Appellees*

8

—————————

OPINION

—————————

SMITH, *Circuit Judge.*

Plaintiffs Crystal and Brian Byrd bring this interlocutory appeal under Rule 23(f) of the Federal Rules of Civil Procedure. The Byrds brought a putative class action against Aaron's, Inc. and its franchisee store Aspen Way Enterprises, Inc. (collectively "Defendants"), who they allege violated the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. § 2511. Concluding that the Byrds' proposed classes were not ascertainable, the District Court denied their motion for class certification. Because the District Court erred in applying our ascertainability precedent, we will reverse and remand.

## I.

Aaron's operates company-owned stores and also oversees independently-owned franchise stores that sell and lease residential and office furniture, consumer electronics, home appliances, and accessories. On July 30, 2010, Crystal Byrd entered into a lease agreement to rent a laptop computer from Aspen Way, an Aaron's franchisee. Although Ms. Byrd asserts that she made full payments according to that agreement, on December 22,

9

2010, an agent of Aspen Way came to the Byrds' home to repossess the laptop on the grounds that the lease payments had not been made. The agent allegedly presented a screenshot of a poker website Mr. Byrd had visited as well as a picture taken of him by the laptop's camera as he played. The Byrds were troubled and surprised by what they considered a significant and unauthorized invasion of their privacy.

Aspen Way obtained the picture and screenshot through spyware—a type of computer software—designed by DesignerWare, LLC and named "PC Rental Agent." This spyware had an optional function called "Detective Mode," which could collect screenshots, keystrokes, and webcam images from the computer and its users. Between November 16, 2010 and December 20, 2010, the Byrds alleged that this spyware secretly accessed their laptop 347 times on eleven different days.[1] In total, "the computers of 895

---

[1] The spyware allegedly captured a wide array of personal information: "credit and debit card numbers, expiration dates, security codes, pin numbers, passwords, social security numbers, birth dates, identity of children and the children's personal school records, tax returns, personal health information, employment records, bank account records, email addresses, login credentials, answers to security questions and private communications with health care providers, therapists,

customers across the country . . . [had] surveillance conducted through the Detective Mode function of PC Rental Agent." *Byrd v. Aaron's, Inc.*, No. CIV.A. 11-101E, 2014 WL 1316055, at *2 (W.D. Pa. Mar. 31, 2014).

The Byrds' operative class-action complaint asserts claims against Aaron's, Aspen Way, more than 50 other independent Aaron's franchisees, and DesignerWare, LLC.[2] The complaint alleges violations

attorneys, and other confidants." The record also reveals what appear to be screenshots of adult-oriented and active webcam transmissions and conversations of an intimate nature.

The spyware, as described in the Byrds' complaint, was Orwellian-like in that it guaranteed that "[t]here was of course no way of knowing whether you were being watched at any given moment," George Orwell, *1984*, at 3 (Signet Classics 1950), because Aspen Way's corporate intranet (and Aaron's corporate server by proxy) apparently activated the PC Rental Agent's Detective Mode "whenever they wanted to." *Id.*

[2] On March 20, 2012, the District Court issued an order noting that DesignerWare filed for bankruptcy in the U.S. Bankruptcy Court for the Western District of Pennsylvania. Accordingly, the District Court ordered that no action be taken against DesignerWare and that the case be administratively closed as to that defendant.

11

of and conspiracy to violate the ECPA, common law invasion of privacy, and aiding and abetting. On Defendants' motion to dismiss, the District Court dismissed the claims against all Aaron's franchisees other than Aspen Way for lack of standing and also all claims for common law invasion of privacy, conspiracy, and aiding and abetting. Thus, the Byrds' remaining claims, and those of the class, are against Aaron's and Aspen Way for direct liability under the ECPA.

In the meantime, the Byrds moved to certify the class under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), in which the Byrds provided two proposed classes and one alternative proposed class.[3] In briefing

---

[3] In the motion for class certification, the Byrds proposed the following classes:

**Class I** (against Aaron's Inc. for direct liability under ECPA) –

> All persons residing in the United States, who have purchased, leased, rented or rented to own, Aaron's computers and individuals who used said computers whose personal information, electronic communications and/or images were intercepted, used, disclosed, accessed, monitored and/or transmitted via PC Rental Agent or other devices or software without the customers [sic] authorization.

12

**Class II** (against Aaron's Inc., Aspen Way, and all other Franchisee Defendants for direct liability under ECPA, invasion of privacy, conspiracy, and aiding and abetting) –

> All customers of the Aaron's Defendants who reside in the United States, who have purchased, leased, rented or rented to own, Aaron's computers and individuals who used said computers whose personal information, electronic communications and/or images were intercepted, used, disclosed, accessed, monitored and/or transmitted by the Aaron's Defendants via PC Rental Agent or other devices or software without the customers [sic] authorization.

*Byrd*, 2014 WL 1316055, at *4. The Byrds also set forth an alternative class definition for Class II as:

**Class II** (against Aaron's Inc., and Aspen Way for direct liability under the ECPA, invasion of privacy, conspiracy, and aiding and abetting (under Wyoming law)) –

> All persons residing in the United States, who have purchased, leased, rented or rented to own, Aaron's computers from Aspen Way Enterprises, Inc., d/b/a Aarons Sales and Leasing, and individual[s] who

13

the motion, the Byrds proposed the following alternative class definitions:

> **Class I** – All persons who leased and/or purchased one or more computers from Aaron's, Inc., and their household members, on whose computers DesignerWare's Detective Mode was installed and activated without such person's consent on or after January 1, 2007.

> **Class II** – All persons who leased and/or

> used said computers whose personal information, electronic communications and/or images were intercepted, used, disclosed, accessed, monitored and/or transmitted by Aspen Way and/or Aaron's via PC Rental Agent or other devices or software without the customers [sic] authorization.

*Id.* It is worth noting that the Byrds' revised proposed class definitions did not expressly require an electronic communication to be "intercepted," although that is a necessary element in successfully proving their ECPA claims. *See* 18 U.S.C. §§ 2511, 2520(a).

14

purchased one or more computers from Aaron's, Inc. or an Aaron's, Inc. franchisee, and their household members, on whose computers DesignerWare's Detective Mode was installed and activated without such person's consent on or after January 1, 2007.

*Byrd*, 2014 WL 1316055, at *5.

The Magistrate Judge recommended denying the Byrds' motion for certification because the proposed classes were not ascertainable. Regarding owner and lessee class members, the Magistrate Judge concluded that the proposed classes were underinclusive because they did "not encompass all those individuals whose information [was] surreptitiously gathered by Aaron's franchisees." *Id.* The Magistrate Judge also determined that the classes were "overly broad" because not "every computer upon which Detective Mode was activated will state a claim under the ECPA for the interception of an electronic communication." *Id.* Regarding "household members," the Magistrate Judge took issue with the fact that the Byrds did not define the phrase. *Id.* Further, although the Byrds stated that the identity of household members could be gleaned from "public records," the Magistrate Judge, citing to *Carrera v. Bayer Corp.*, 727 F.3d 300, 306, 308 (3d Cir. 2013), reasoned that "[i]t [was] not enough to propose a method by which this information may be obtained." *Byrd*, 2014 WL 1316055, at *5. The District Court adopted the Report and

15

Recommendation as the opinion of the court over the Byrds' objections. The Byrds timely appealed.

## II.

The District Court had federal question jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f). "We review a class certification order for abuse of discretion, which occurs if the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 179 (3d Cir. 2014) (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 354 (3d Cir. 2013)) (internal quotation marks omitted). We review de novo a legal standard applied by a district court. *Carrera*, 727 F.3d at 305.

## III.

The central question in this appeal is whether the District Court erred in determining that the Byrds' proposed classes were not ascertainable. Because the District Court confused ascertainability with other relevant inquiries under Rule 23, we conclude it abused its discretion and will vacate and remand.

Before discussing these errors, however, we believe it is necessary to address the scope and source of

16

the ascertainability requirement that our cases have articulated. Our ascertainability decisions have been consistent and reflect a relatively simple requirement. Yet there has been apparent confusion in the invocation and application of ascertainability in this Circuit. (Whether that is because, for example, the courts of appeals have discussed ascertainability in varying and distinct ways,[4] or the ascertainability requirement is

---

[4] For example, some of our sister courts of appeals have interspersed their analysis of ascertainability, or "identifiability," with explicit Rule 23 requirements. *See, e.g.*, *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (discussing ascertainability and numerosity simultaneously); *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009) (unpublished) (discussing ascertainability but reversing class certification based on lack of typicality); *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 44-45 (2d Cir. 2006) (discussing ascertainability and predominance simultaneously, although noting they are separate inquiries), *decision clarified on denial of reh'g sub nom. In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (discussing identifiability—the Seventh Circuit's approximation of the "ascertainability" standard—in conjunction with the typicality requirement).

Conversely, others have framed ascertainability as requiring that there be an "objective standard" to determine whether class members are included in or excluded from the class without reference to any particular portion of Rule 23. *See, e.g.*, *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358–60 (4th Cir. 2014) (explaining the Fourth Circuit's implicit "readily identifiable" requirement for a proposed class is the same as our Circuit's "ascertainability" requirement, without discussing the source of the standard); *In re Deepwater Horizon*, 739 F.3d 790, 821 (5th Cir. 2014) (requiring a class to be "adequately defined and clearly ascertainable" (citation and internal quotation marks omitted)), *cert. denied sub nom. BP Exploration & Prod. Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S. Ct. 754 (2014); *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 139 (1st Cir. 2012) (discussing only that the "presence of such an objective criterion overcomes the claim that the class is unascertainable"); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1308 (11th Cir. 2012) (mentioning ascertainability but ruling under Rule 23(b)(3)'s predominance standard); *Oshana*, 472 F.3d at 513–14 (applying an "identifiab[ility]" standard without discussing the source of the rule); *Shook v. El Paso Cnty.*, 386 F.3d 963, 972 (10th Cir. 2004) (noting an "identifiability" requirement for 23(b)(3) classes but declining to apply the standard to a Rule 23(b)(2) class).

implicit rather than explicit in Rule 23,[5] we need not

Even the citations we relied upon in *Marcus v. BMW of North America, LLC*, to discuss the policy rationales behind ascertainability, 687 F.3d 583, 593 (3d Cir. 2012), failed to address squarely the undergirding for this implicit requirement. *See, e.g.*, *Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) (relying in part on our decision in *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 191–93 (3d Cir. 2001), which in fact analyzed a proposed class under Rule 23(b)(3) and the superiority requirement); *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 446 & n.9 (E.D. Pa. 2000) (blending the issue of ascertainability with class definition and cross-referencing a later discussion on predominance and superiority); Federal Judicial Center, *Manual for Complex Litigation* § 21.222 (4th ed. 2004) (citing to Rule 23(c)(2)'s requirement that class members in a Rule 23(b)(3) action receive the "best notice practicable").

[5] Ascertainability is an "essential prerequisite," or an *implied* requirement, of Rule 23, "at least with respect to actions under Rule 23(b)(3)." *Marcus*, 687 F.3d at 592–93. *Marcus* identified "important objectives," *id.* at 593, or policy rationales, supporting the ascertainability requirement. These included removing administrative burdens that were "incongruous with the efficiencies expected in a class action," providing the best notice practicable under Rule 23(c)(2) in a

19

say.) Not surprisingly, defendants in class actions have seized upon this lack of precision by invoking the ascertainability requirement with increasing frequency in order to defeat class certification.[6]

We seek here to dispel any confusion. The source

Rule 23(b)(3) action, and protecting defendants by ensuring that those persons ultimately bound by the final judgment could be clearly identified. *Id.* at 593. Our opinion in *Carrera* expanded on some of the concerns addressed in *Marcus*, specifically relating to a defendant's "due process right to challenge the proof used to demonstrate class membership." 727 F.3d at 307.

[6] *See, e.g.*, Class Action Reporter, *Courts Scrutinize Class Certification "Ascertainability,"* Vol. 17, Feb. 6, 2015, (explaining that "courts across the country are increasingly scrutinizing 'ascertainability' at the class certification stage"); Melody E. Akhavan, *Ascertainability Challenge Is Viable Weapon for Defense*, Law360, Nov. 26, 2014, http://www.law360.com/articles/599335/ascertainability-challenge-is-viable-weapon-for-defense ("Courts' focus on ascertainability has become an increasingly useful tool for defendants fighting class certification."); Alida Kass, *Third Circuit Case Could Limit Consumer Class Actions*, N.J. Law Journal, June 25, 2014 ("[T]he Third Circuit will be a fertile ground for exploring the boundaries of ascertainability.").

of, or basis for, the ascertainability requirement as to a Rule 23(b)(3) class is grounded in the nature of the class-action device itself. In endeavoring to further explain this concept, we adhere to the precise boundaries of ascertainability previously iterated in the quartet of cases we discuss below. The ascertainability requirement as to a Rule 23(b)(3) class is consistent with the general understanding that the class-action device deviates from the normal course of litigation in large part to achieve judicial economy. *See Comcast*, 133 S. Ct. at 1432 (discussing generally the nature of the class-action device). Ascertainability functions as a necessary prerequisite (or implicit requirement) because it allows a trial court effectively to evaluate the explicit requirements of Rule 23. In other words, the independent ascertainability inquiry ensures that a proposed class will actually function as a class. This understanding of the source of the ascertainability requirement takes a forward-looking view of the administration of the Rule 23(b)(3) class-action device in practice.

## A.

The class-action device is an exception to the rule that litigation is usually "'conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). Accordingly, the party proposing class-action certification bears the burden of affirmatively

21

demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23. *Id.* And a court evaluating a motion for class certification is obligated to probe behind the pleadings when necessary and conduct a "rigorous analysis" in order to determine whether the Rule 23 certification requirements are satisfied. *Id.*; *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008), *as amended* (Jan. 16, 2009). A plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable.[7] *Hayes*, 725 F.3d at 354. The rigorous analysis requirement applies equally to the ascertainability inquiry. *Carrera*, 727 F.3d at 306.

The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is "defined with reference to objective criteria"; and (2) there is "a reliable

---

[7] In *Shelton v. Bledsoe*, we held that ascertainability is not a requisite of a Rule 23(b)(2) class. 775 F.3d 554, 559–63 (3d Cir. 2015). The Byrds sought certification of their proposed classes under both Rule 23(b)(2) and Rule 23(b)(3). Lacking the benefit of our *Shelton* decision, the District Court denied certification without distinguishing between Rule 23(b)(2) and Rule 23(b)(3). Accordingly, the District Court on remand should also consider whether the classes may be separately certified under Rule 23(b)(2).

and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* at 355 (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593–94 (3d Cir. 2012)). The ascertainability requirement consists of nothing more than these two inquiries. And it does not mean that a plaintiff must be able to identify all class members at class certification—instead, a plaintiff need only show that "class members *can* be identified." *Carrera*, 727 F.3d at 308 n.2 (emphasis added). This preliminary analysis dovetails with, but is separate from, Rule 23(c)(1)(B)'s requirement that the class-certification order include "(1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis." *Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 187–88 (3d Cir. 2006).

We have on four occasions addressed the requirement that a Rule 23(b)(3) class be "ascertainable" in order to be certified. Our quartet of cases began with *Marcus v. BMW of North America, LLC*, in which we adopted this implicit ascertainability requirement. 687 F.3d at 592–94. We explained, "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.* at 593. We concluded that

the proposed class "raise[d] serious ascertainability issues," largely because the plaintiffs could not identify cars with the allegedly defective run-flat tires. *Id.* at 593. The defendants did not maintain records that would demonstrate whether a putative class member's run-flat tires "'ha[d] gone flat and been replaced,' as the class definition require[d]," and the plaintiffs had not proposed "a reliable, administratively feasible alternative" to identify class members. *Id.* at 594.

Shortly thereafter, in *Hayes v. Wal-Mart Stores, Inc.*, we straightforwardly applied the ascertainability rule established by *Marcus* and remanded the case to the district court to apply *Marcus*'s standard and to allow the plaintiffs to "offer some reliable and administratively feasible alternative that would permit the court to determine" whether the class was ascertainable. 725 F.3d at 355. That same month, we decided *Carrera v. Bayer Corp.*, an appeal involving the proposed certification of a "class of consumers who purchased Bayer's One-A-Day WeightSmart diet supplement in Florida." 727 F.3d at 303. To prove ascertainability, the plaintiff proposed using retailer records and class member affidavits attesting to purchases of the diet supplement. *Id.* at 308. Although we opined that retail records "may be a perfectly acceptable method of proving class membership," we noted that the plaintiff's proposed retail records did not identify a single purchaser of the Bayer diet supplement. *Id.* at 308–09. We

24

therefore rejected the proposed methods of proving ascertainability.

As to the use of affidavits, we began by explaining that in *Marcus*, "[w]e cautioned 'against approving a method that would amount to no more than ascertaining by potential class members' say so.'" *Id.* at 306 (quoting *Marcus*, 687 F.3d at 594). We rejected the plaintiff's proposed methodology to screen out false affidavits because the plaintiff's expert declaration did not establish that the "affidavits will be reliable" or "propose a model for screening claims." *Id.* at 311. Remarkably, even the named plaintiff could not recall whether he had purchased the diet supplement. *Id.* at 311 n.9.

We were careful to specify in *Carrera* that "[a]lthough some evidence used to satisfy ascertainability, such as corporate records, will actually identify class members at the certification stage, ascertainability only requires the plaintiff to show that class members *can be identified*." *Id.* at 308 n.2 (emphasis added). Accordingly, there is no records requirement. *Carrera* stands for the proposition that a party cannot merely provide assurances to the district court that it will later meet Rule 23's requirements. *Id.* at 306. Nor may a party "merely propose a method of ascertaining a class without any evidentiary support that the method will be successful." *Id.* at 306, 307, 311.

25

Following the *Marcus-Hayes-Carrera* trilogy, we again considered the issue of ascertainability in *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d at 184–85. There we affirmed the denial of certification of a Rule 23(b)(3) class on predominance grounds, but noted that the district court also erred in denying certification based on ascertainability. *Id.* at 184–85. We concluded that the district court's analysis "conflated ascertainability with the predominance inquiry." *Id.* at 184. The predominance and ascertainability inquiries are distinct, we explained, because "'the ascertainability requirement focuses on whether individuals fitting the class definition may be identified without resort to mini-trials, whereas the predominance requirement focuses on whether essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence.'" *Id.* (quoting *Hayes*, 725 F.3d at 359).

Ascertainability is closely tied to the other relevant preliminary inquiry we addressed in *Marcus*, 687 F.3d at 592, that plaintiffs provide a proper class definition, Fed. R. Civ. P. 23(c)(1)(B). A trial court also needs a class to be "defined with reference to objective criteria" and some assurance that there can be "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition," *Hayes*, 725 F.3d at 355, in order to rigorously analyze the explicit Rule 23(a) and (b) certification

26

requirements, *Comcast*, 133 S. Ct. at 1432. When combined with the separate class-definition requirement from *Wachtel*, that a class-certification order contain "a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified," 453 F.3d at 187–88, district courts have the necessary tools to determine whether "a party seeking to maintain a class action" can "'affirmatively demonstrate his compliance' with Rule 23." *See Comcast*, 133 S. Ct. at 1432 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011)).

And after certification, a trial court is tasked with providing "the best notice that is practicable" to the class members under Rule 23(c)(2)(B), "'including individual notice to all class members who can be identified through reasonable effort.'" *Larson v. AT & T Mobility LLC*, 687 F.3d 109, 123 (3d Cir. 2012) (quoting Fed. R. Civ. P. 23(c)(2)(B)). We are "stringent in enforcing th[at] individual notice requirement." *Id.* at 126. The separate ascertainability requirement ensures that class members can be identified after certification, *Carrera*, 727 F.3d at 308 n.2, and therefore better prepares a district court to "direct to class members the best notice that is practicable under the circumstances," Fed. R. Civ. P.

23(c)(2)(B); *see also Larson*, 687 F.3d at 117 n.10, 123–31 (applying the Rule 23(c)(2)(B) requirement).[8]

The ascertainability inquiry is narrow. If defendants intend to challenge ascertainability, they must be exacting in their analysis and not infuse the ascertainability inquiry with other class-certification requirements. As we said in *Carrera*, "ascertainability only requires the plaintiff to show that class members can be identified." 727 F.3d at 308 n.2. This inquiry will not

---

[8] An additional post-certification concern relates to the argument by some that the class-action device fails in its purpose if a judgment or settlement cannot be executed without resulting in a largely *cy pres* fund. *E.g.*, *Marek v. Lane*, 134 S. Ct. 8, 9 (2013) (Roberts, C.J., statement respecting denial of certiorari) (noting "fundamental concerns surrounding the use of [*cy pres*] remedies in class action litigation"); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 172–74 (3d Cir. 2013) (upholding limited use of *cy pres* distributions but cautioning against largely *cy pres* funds). Although we need not address the propriety of *cy pres* funds in this case, we do note that the risk of a *cy pres* fund is reduced, even if not entirely removed, when a court has affirmatively concluded that there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *See Hayes*, 725 F.3d at 355.

be relevant in every case and is independent from the other requirements of Rule 23.

## B.

With this explanation of ascertainability in mind, we will reverse the District Court for four reasons. First, the District Court abused its discretion by misstating the rule governing ascertainability. Second, the District Court engrafted an "underinclusive" requirement that is foreign to our ascertainability standard. Third, the District Court made an errant conclusion of law in finding that an "overly broad" class was not ascertainable. And fourth, the District Court improperly applied the legal principles from *Carrera* to the issue of whether "household members" could be ascertainable.

## 1.

The District Court misstated the law governing ascertainability by conflating our standards governing class definition with the ascertainability requirement. The District Court prefaced its discussion with the section header "Ascertainability and Defining the Class." The District Court then stated the following as the applicable legal standard:

> "As an 'essential prerequisite' to the Rule 23 analysis, the Court must consider 1) whether there is a precisely defined class and

29

2) whether the named Plaintiffs are members of the class. *Marcus v. BMW of North America*, 687 F.3d 583, 596 (3d Cir. 2012) . . . . At the first step of the analysis, determining whether there is a precisely defined class entails two separate and important elements: 'first, the class must be defined with reference to objective criteria' and 'second, there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.' *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)."

*Byrd*, 2014 WL 1316055, at *3.

Although the District Court is correct that the class definition requirements are applicable to a class-certification order, *Wachtel*, 453 F.3d at 187–88, and that class definition is a valid preliminary consideration, *Marcus*, 687 F.3d at 591–92, it was not the reason the District Court denied class certification. What the District Court described as the two requirements for a "precisely defined class" was in fact the inquiry relevant to the *ascertainability* standard. *See Hayes*, 725 F.3d at 355. In blending the issue of ascertainability with that of class definition (which *Marcus* took pains to address as separate preliminary inquiries that preceded the Rule 23 analysis, 687 F.3d at 591–94), the District Court erred.

Also troubling is the District Court's discussion of class membership. *Byrd*, 2014 WL 1316055, at *3, *6 n.8. The question of "whether the named Plaintiffs are members of the class" has nothing to do with either the requirements of a class definition, *Wachtel*, 453 F.3d at 187–88, or the ascertainability standard, *Marcus*, 687 F.3d at 592–94. In fact, the District Court's citation to *Marcus* on this point related to its discussion of numerosity—not class definition or ascertainability. *See Byrd*, 2014 WL 1316055, at *3 (citing *Marcus*, 687 F.3d at 596 (discussing numerosity)). And although the District Court generally cited to *Hayes*, in that case we addressed "membership" not as relating to ascertainability and only with regard to whether the named plaintiff had Article III standing to sue as a class representative. *See Hayes*, 725 F.3d at 360–61. In sum, we conclude that the District Court should have applied nothing more or less than the ascertainability test that has been consistently laid out by this Court.

**2.**

The District Court also abused its discretion in determining that the proposed classes were not ascertainable because they were underinclusive. The District Court reasoned that although the records provided by Aaron's "may reveal the computers upon which Detective Mode was activated and the owner/lessee of that computer," the Byrds did "not provide an administratively feasible way to determine

31

whose information was surreptitiously gathered." *Byrd*, 2014 WL 1316055, at *5. For this reason, the District Court explained, the proposed "class definition [did] not encompass all those individuals whose information ha[d] been surreptitiously gathered by Aaron's franchisees." *Id.* But the District Court was looking to an old, no-longer-operative class definition, *see supra*, n.3*,* because the Byrds had redefined the proposed classes by eliminating the requirement that a class member's information was "intercepted" or "surreptitiously gathered."[9] Thus, the District Court's analysis was not germane to the Byrds' proposed class definitions or the relevant bases for class membership.

---

[9] The ECPA permits any person to bring a civil action "whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a); *see also id.* § 2511. The Byrds' operative complaint alleges that the PC Rental Agent "allows its installer (here, the rent-to-own store) to remotely and surreptitiously build and activate the 'Detective Mode' function on the laptop over the Internet and through the Aaron's Inc. and DesignerWare websites." *Byrd*, 2014 WL 1316055, at *2. The relevant statutory terms were discussed because the District Court observed that "not all information gathered surreptitiously will constitute an 'interception' of the 'contents' of an 'electronic communication'" by the PC Rental Agent. *Id.*

32

Defendants contend that "underinclusiveness" was an appropriate consideration in support of the denial of class certification. They rely on a district court decision, *Bright v. Asset Acceptance, LLC*, 292 F.R.D. 190, 197 (D.N.J. 2013), to support their argument. But "whether the defined class specifies a particular group that was *harmed* during a particular time frame, in a particular location, in a particular way," *Bright*, 292 F.R.D. at 197 (emphasis added), is not included in our ascertainability test. Further, requiring such specificity may be unworkable in some cases and approaches requiring a fail-safe class. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (explaining that a fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim"). Defining the class "in terms of the legal injury," *In re Nexium Antitrust Litig.*, 777 F.3d at 22, is not the same as requiring the class to be defined "with reference to objective criteria." *See Hayes*, 725 F.3d at 355.

We decline to engraft an "underinclusivity" standard onto the ascertainability requirement. Individuals who are injured by a defendant but are excluded from a class are simply not bound by the outcome of that particular action. *Cf., e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 884, 894 (2008) ("Representative suits with preclusive effect on nonparties include properly conducted class actions."); *United States v.*

33

*Mendoza*, 464 U.S. 154, 158 n.3 (1984) ("Under res judicata, a final judgment on the merits bars further claims by parties or their privies on the same cause of action."). In the context of ascertainability, we have only mentioned "underinclusivity" with regard to whether the *records* used to establish ascertainability were sufficient, *see Hayes*, 725 F.3d at 355 (citing *Marcus*, 687 F.3d at 594), not whether there are injured parties that could also be included in the class. Requiring a putative class to include all individuals who may have been harmed by a particular defendant could also severely undermine the named class representative's ability to present typical claims (Fed. R. Civ. P. 23(a)(3)) and adequately represent the interests of the class (Fed. R. Civ. P. 23(a)(4)). The ascertainability standard is neither designed nor intended to force all potential plaintiffs who may have been harmed in different ways by a particular defendant to be included in the class in order for the class to be certified.

### 3.

Similarly, the District Court also abused its discretion in determining that the proposed classes were not ascertainable because they were "overly broad." The District Court concluded that "more problematic for Plaintiffs is the fact that the alternative definitions are overly broad" because "[n]ot every computer upon which Detective Mode was activated will state a claim under the ECPA for the interception of electronic communication."

34

*Byrd*, 2014 WL 1316055, at \*5. There was, again, no reference to our ascertainability precedent or that of any other court.

Defendants also rely on *Bright* for the proposition that a class is not "ascertainable if it is decoupled from the underlying allegations of harm rendering it . . . overbroad." *See Bright*, 292 F.R.D. at 197. They also cite myriad cases from other district courts and courts of appeals to justify the consideration of overbreadth in our ascertainability standard. Such applications of the ascertainability standard fuel the precise mistake we attempted to correct in *Grandalski v. Quest Diagnostics Inc.*—that is, injecting the explicit requirements of Rule 23 into the ascertainability standard without actually analyzing those requirements under the correct portion of Rule 23. *See* 767 F.3d at 184 n.5 ("Predominance and ascertainability are separate issues."). And at oral argument, Defendants conceded that the District Court's analysis regarding overbreadth was really identifying a potential predominance problem.

Defendants' reliance on authority outside this Circuit does nothing to bolster their argument. For example, they extensively discuss *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006), to support the proposition that an overbroad class is not ascertainable. In *Oshana*, the Seventh Circuit considered whether a class consisting of "all Illinois purchasers of fountain Diet Coke from March 12, 1999 forward" was certifiable

35

under Rule 23. *Id.* at 509. The Court required that in addition to satisfying the Rule 23(a) and (b) requirements, a "plaintiff must also show . . . that the class is indeed identifiable as a class." *Id.* at 513. Reasoning that the proposed class could "include millions who were not deceived and thus have no grievance under the [Illinois Consumer Fraud and Deceptive Practices Act]," the Seventh Circuit affirmed the district court's determination that the proposed class was "not sufficiently definite to warrant class certification." *Id.* at 513–14.

The "definiteness" standard from *Oshana* is distinguishable from our Circuit's ascertainability requirement. The standard applied in the Seventh Circuit is based on the premise that because "[i]t is axiomatic that for a class action to be certified a 'class' must exist," *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981), a class definition must be *definite enough* for the class to be ascertained, *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). In short, the class must be "indeed identifiable as a class." *Oshana*, 472 F.3d at 513. A class may be indefinite where "the relevant criteria for class membership [is] unknown." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 495 (7th Cir. 2012). Although this doctrine is similar to the parameters laid out in our ascertainability cases, it blends together our Circuit's ascertainability and class definition requirements. *Compare Oshana*, 472 F.3d at 513, *with*

36

*Hayes*, 725 F.3d at 355, *and Wachtel*, 453 F.3d at 187–88.  As we made patent in *Marcus*, we address class definition and ascertainability as separate inquiries.  687 F.3d at 591–94.

Defendants also argue that a proposed class is overbroad "where putative class members lack standing or have not been injured."  Defendants' argument conflates the issues of ascertainability, overbreadth (or predominance), and Article III standing.  We have explained that the issue of standing is separate from the requirements of Rule 23.  *See, e.g.*, *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000) ("In addition to the requirements expressly enumerated in Rule 23, class actions are also subject to more generally applicable rules such as those governing standing and mootness.").  To the extent Defendants meant to challenge any potential differences between the proposed class representatives and unnamed class members, such differences should be considered within the rubric of the relevant Rule 23 requirements—such as adequacy, typicality, commonality, or predominance.  *See Grandalski*, 767 F.3d at 184–85; *see also Holmes*, 213 F.3d at 137–38 (discussing an "overbroad" class as requiring individual determinations that fail to satisfy Rule 23(b)(3)'s predominance requirement).  Conversely, if Defendants intended to argue that all putative class members must have standing, such challenges should be squarely raised and decided by the District Court.

Because the District Court has yet to conduct a rigorous analysis of the Rule 23 requirements, we decline to address these issues in the first instance.

The Byrds' proposed classes consisting of "owners" and "lessees" are ascertainable. There are "objective records" that can "readily identify" these class members, *cf. Grandalski*, 767 F.3d at 184 n.5, because, as explained by the District Court, "Aaron's own records reveal the computers upon which Detective Mode was activated, as well as the full identity of the customer who leased or purchased each of those computers." *Byrd*, 2014 WL 1316055, at *5. The District Court's conclusion to the contrary was an abuse of discretion.

**4.**

The District Court again abused its discretion in determining that "household members" were not ascertainable. The District Court concluded that the inclusion of the phrase "household members" in the Byrds' revised class definitions was vague and not ascertainable. In the Byrds' reply brief on the motion for class-action certification, they asserted in a footnote that "[h]ousehold members can easily be objectively verified through personal and public records. And their usage of the owner/lessee's computers can also be easily objectively established." The Magistrate Judge recommended denying class certification because the Byrds did not define "household members" or prove by a

38

preponderance of the evidence how "'household members' can be verified through personal and public records."

In their objections to the Magistrate Judge's Report and Recommendation, the Byrds argued that they intended "the plain meaning of 'household members.'" On appeal, the Byrds continue to argue that they intended the plain meaning of "household members" to be "all of the people, related or unrelated, who occupy a housing unit." By way of example, the Byrds cite to multiple definitions used in government documents for census, taxation, and immigration purposes. With these definitions, they contend that the simple act of confirming membership would mean matching addresses in public records with that of an owner or lessee that had already been identified.

The "household members" of owners or lessees are ascertainable. Although the government documents cited by the Byrds do contain slight variations on the definition of a household member (as noted by Defendants), the Byrds presented the District Court with various ways in which "household members" could be defined and how relevant records could be used to verify the identity of household members. Because the District Court summarily adopted the Magistrate Judge's Report and Recommendation, and no oral argument was held on the class-certification motion, we are left to wonder why the District Court determined that the Byrds' explanation in

their objections to the Report and Recommendation was inadequate.

The parties also dispute whether the phrase "household members" is often used in class definitions. Although it is true that the phrase "household members" has been used in other class definitions,[10] we decline the invitation categorically to conclude that the use of this phrase will always have sufficient precision in the ascertainability context. The inquiry in any given case should be whether a class is "defined with reference to

---

[10] *See, e.g.*, *Ortiz*, 527 U.S. at 827 n.5 (reversing the approval of an asbestos settlement class that happened to include "household member" in the class definition); *Amchem Prods., Inc.*, 521 U.S. at 602 (analyzing the validity of a class that included "household members" on grounds other than ascertainability); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 619 & n.3, 633 (3d Cir. 1996) (including in the class "occupational exposure of a spouse or household member to asbestos, or to asbestos-containing products")*, aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 108 (E.D. Pa. 2013) (settlement class definition that included "household members"), *appeal dismissed* (July 25, 2013); *Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 319 (E.D. Pa. 1993) (using a similar definition as *Georgine*).

objective criteria" and whether there is a "reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hayes*, 725 F.3d at 355. Whether a class is ascertainable is dependent on the nature of the claims at issue. But as used here, "household members" is a phrase that is easily defined and not, as Defendants argue, inherently vague.

We also conclude that Defendants' and the District Court's reliance on *Carrera* is misplaced. In *Carrera*, we concluded that the plaintiffs' proposed reliance on affidavits alone, without any objective records to identify class members or a method to weed out unreliable affidavits, could not satisfy the ascertainability requirement. 727 F.3d at 311. Here the Byrds presented the District Court with multiple definitions of class members and simply argued that a form similar to those provided could be used to identify household members. This is a far cry from an unverifiable affidavit, or the absence of any methodology that can be used later to ascertain class members. *See id.* at 310–11.

The Byrds' proposed method to ascertain "household members" is neither administratively infeasible nor a violation of Defendants' due process rights. Because the location of household members is already known (a shared address with one of the 895 owners and lessees identified by the Byrds), there are unlikely to be "serious administrative burdens that are

41

incongruous with the efficiencies expected in a class action." *Marcus*, 687 F.3d at 593 (citation and internal quotation marks omitted). There will always be some level of inquiry required to verify that a person is a member of a class; for example, a person's statement that she owned or leased an Aspen Way computer would eventually require anyone charged with administering the fund resulting from a successful class action to ensure that person is actually among the 895 customers identified by the Byrds. Such a process of identification does not require a "'mini-trial,'" nor does it amount to "'individualized fact-finding,'" *Carrera*, 727 F.3d at 307 (quoting *Marcus*, 687 F.3d at 594), and indeed must be done in most successful class actions.

Certainly, *Carrera* does not suggest that *no* level of inquiry as to the identity of class members can ever be undertaken. If that were the case, no Rule 23(b)(3) class could ever be certified. We are not alone in concluding that "the size of a potential class and the need to review individual files to identify its members are not reasons to deny class certification." *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539–40 (6th Cir. 2012) (collecting cases). To hold otherwise would seriously undermine the purpose of a Rule 23(b)(3) class to aggregate and vindicate meritorious individual claims in an efficient manner. Fed. R. Civ. P. Rule 23(b)(3) 1966 advisory committee's notes (Rule 23(b)(3) "achieve[s] economies of time, effort, and expense, and promote[s]

42

uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.").

As to Defendants' contention that their due process rights would be violated, *Carrera* counsels that this due process right relates to the ability to "challenge the proof used to demonstrate class membership." 727 F.3d at 307. Here, the Byrds are not relying solely on unverified affidavits to establish ascertainability. *See id.* at 307–08; *Hayes*, 725 F.3d at 356 (reasoning that a class is not ascertainable where "the only proof of class membership [was] the say-so of putative class members"). Any form used to indicate a household member's status in the putative class must be reconciled with the 895 known class members or some additional public records. Defendants are not foreclosed from challenging the evidence the Byrds propose to use.

In sum, the District Court erred in its application of *Carrera* and in concluding that the phrase "household members" was inherently vague.

## C.

In light of the errors discussed above, we will remand to the District Court to consider the remaining Rule 23 certification requirements in the first instance. At oral argument and in their briefs, Defendants urged us to read the District Court's ruling as one on

predominance, independently review the record in this case, and conclude that the Byrds' proposed classes fail to satisfy Rule 23(b)(3)'s predominance requirement. Defendants contend that the elements of an ECPA claim, particularly that each plaintiff must show the interception of the "contents" of an "electronic communication," create insurmountable barriers to proving predominance. *See* 18 U.S.C. § 2511(1)(a), (c), (d). Formidable though these barriers may be, they are not for us to address in the first instance.

Beginning in *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160–161 (1982), through its recent decision in *Comcast Corp. v. Behrend*, 133 S. Ct. at 1432, the Supreme Court has repeatedly emphasized the need for a district court to conduct a rigorous analysis of the evidence in support of certification under Rule 23. "By their nature, interlocutory appeals are disruptive, time-consuming, and expensive"; thus, it makes sense to allow the "district court an opportunity to fine-tune its class certification order . . . rather than opening the door too widely to interlocutory appellate review." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 294–95 (1st Cir. 2000) (exercising discretionary authority under Rule 23(f) in order to give a district court "a better sense as to which aspects of the class certification decision might reasonably be open to subsequent reconsideration"). This is consistent with the narrow, yet flexible, set of considerations we address in granting a

44

Rule 23(f) petition. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 164–65 (3d Cir. 2001); *see also In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 578 n.9 (3d Cir. 2014). We best exercise appellate review when the dust has settled and a district court has fully considered a motion for class-action certification.

What is more, a close reading of Defendants' response briefs demonstrates how they continue to conflate ascertainability with the other relevant requirements of Rule 23. We write again to emphasize that at class certification, Rule 23's explicit requirements go beyond and are separate from the ascertainability inquiry. Precise analysis of *relevant* Rule 23 requirements will always be necessary. We therefore decline to go beyond the scope of the District Court's opinion.

## V.

The District Court erred both in relying on an errant conclusion of law and improperly applying law to fact. Accordingly, we will reverse and remand for further consideration in light of this opinion.

**RENDELL**, <u>Circuit Judge</u>, <u>concurring</u>:

I agree with the majority that, under our current jurisprudence, the class members here are clearly ascertainable. Indeed, as Judge Smith points out, "Aaron's own records reveal the computers upon which Detective Mode was activated, as well as the full identity of the customer who leased or purchased each of those computers." (Maj. Op. at 37) (quoting *Byrd v. Aaron's, Inc.*, No. 11-cv-101, 2014 WL 1316055, at *5 (W.D. Pa. Mar. 31, 2014)). It is hard to argue otherwise, and I do not. However, I do suggest that the lengths to which the majority goes in its attempt to clarify what our requirement of ascertainability means, and to explain how this implicit requirement fits in the class certification calculus, indicate that the time has come to do away with this newly created aspect of Rule 23 in the Third Circuit. Our heightened ascertainability requirement defies clarification. Additionally, it narrows the availability of class actions in a way that the drafters of Rule 23 could not have intended.

Historically, the ascertainability inquiry related to whether the court will be able to determine who fits within the class definition for purposes of award or settlement distribution and the preclusion of the relitigation of claims.[1] It is a test that scrutinizes the class definition, and properly

---

[1] *See* Manual for Complex Litigation (Fourth) § 21.222 (2004) ("An identifiable class exists if its members can be ascertained by reference to objective criteria."); Joseph M. McLaughlin, McLaughlin on Class Actions § 4:2 (11th ed. 2014) ("[C]lass members need to be able to determine with certainty from a class notice whether they are in the class. . . . If the class definition is amorphous, persons may not recognize that they are in the class, and thus may be deprived of the opportunity to object or opt out."); 5 James Wm. Moore et al., Moore's Federal Practice ¶ 23.21[1] (3d ed. 1999) (noting that a class must be "susceptible to precise definition").

so.[2]  But this is now only the first element of our two-part test for ascertainability.  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012); *see also Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013) ("The class must be defined with reference to objective criteria.").

---

[2] Courts have found classes to be ascertainable when the class definition is sufficiently specific.  *Compare Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 593 (C.D. Cal. 2008) (holding that prospective plaintiffs are capable of determining whether they were class members because class definition included purchasers of a certain vehicle who paid for the replacement of a certain part in a certain time period), *and Bynum v. District of Columbia*, 214 F.R.D. 27, 31-32 (D.D.C. 2003) (holding that prospective class members are capable of identifying themselves based on the dates of their incarceration included in the class definition), *and Pigford v. Gickman*, 182 F.R.D. 341, 346 (D.D.C. 1998) (holding that class members are capable of identifying themselves based on whether they had applied for participation in a USDA federal farm program during the specified dates), *with In re Copper Antitrust Litig.*, 196 F.R.D. 348, 350-51, 358-60 (W.D. Wis. 2000) (refusing to certify class of "[a]ll copper or metals dealers . . . that purchased physical copper" during a specified time period "at prices expressly related to LME or Comex copper future prices" because the class definition fell "far short of communicating to copper purchasers what they need to know to decide whether they are in or outside the proposed class," in that the definition failed to explain the terms "copper or metals dealers," "physical copper," and "expressly related to").

In 2012 we adopted a second element, namely, requiring district courts to make certain that there is "a reliable, administratively feasible" method of determining who fits into the class, thereby imposing a heightened evidentiary burden. *Marcus*, 687 F.3d at 594. We have precluded class certification unless there can be objective proof—beyond mere affidavits—that someone is actually a class member. *Id.*; *accord Carrera v. Bayer Corp.*, 727 F.3d 300, 308-12 (3d Cir. 2013). This concept has gained traction in recent years.[3] I submit that this "business record" or

---

[3] Several courts have denied class certification on ascertainability grounds similar to our current ascertainability test. *See, e.g.*, *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 689 (S.D. Fla. 2014) (denying certification of class suing defendant for mislabeling product as "All Natural" in violation of Florida's deceptive advertising law because potential class members were unlikely to remember if they bought a product with such a label); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 572 (E.D. Tenn. 2014) (denying certification of class suing drug manufacturer for violating antitrust laws because plaintiffs did not propose feasible model for screening fraudulent claims); *Brey Corp. v. LQ Mgmt. LLC*, No. 11-cv-718, 2014 WL 943445, at *1 (D. Md. Jan. 30, 2014) (denying certification of class suing defendant for violating antitrust laws because ascertaining who belongs in the class would require individualized fact-finding).

4

"paper trail" requirement is ill-advised.[4]   In most low-value consumer class actions, prospective class members are unlikely to have documentary proof of purchase, because very few people keep receipts from drug stores or grocery stores. This should not be the reason to deny certification of a class.[5] As Judge Ambro's dissent from the denial of the petition for rehearing en banc in *Carrera* noted, "[w]here a defendant's lack of records . . . make it more difficult to ascertain the members of an otherwise objectively verifiable low-value class, the consumers who make up that class should not be made to suffer." *Carrera v. Bayer Corp.*, No. 12-2621, 2014 WL 3887938, at *3 (3d Cir. May 2, 2014) (Ambro, J. dissenting).

Records are not the only way to prove that someone is

---

[4] While the majority cites a footnote in *Carrera* as standing for the proposition that we have no "records requirement," the class in *Carrera* failed the ascertainability test because there were no records from which the class members could be ascertained with certainty.  (Maj. Op. at 25 (citing *Carrera*, 727 F.3d at 308. n.2)).

[5] *See, e.g.*, *McCrary v. Elations Co., LLC*, No. 13-cv-242, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014) ("It appears that pursuant to *Carerra* [sic] in any case where the consumer does not have a verifiable record of its purchase, such as a receipt, and the manufacturer or seller does not keep a record of buyers, *Carerra* [sic] prohibits certification of the class."); *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012) (warning that, if lack of receipts dooms certification, "there would be no such thing as a consumer class action" in cases concerning false or deceptive labeling of small-value items).

in a class. It is the trial judge's province to determine what proof may be required at the claims submission and claims administration stage. It is up to the judge overseeing the class action to decide what she will accept as proof when approving the claim form. Could not the judge decide that, in addition to an individual's "say so" that he is a member of the class, the claimant needs to submit an affidavit from another household member or from his doctor corroborating his assertion that he did, in fact, take Bayer aspirin? Is that not permissible and appropriate? Yet, we foreclose this process at the outset of the case by requiring that plaintiffs conjure up all the ways that they might find the evidence sufficient to approve someone as a class member.

This puts the class action cart before the horse and confuses the class certification process, as this case makes manifest. The irony of this result is that it thwarts "[t]he policy at the very core of the class action mechanism," i.e., "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). Indeed, "[a] class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id.* We have effectively thwarted small-value consumer class actions by defining ascertainability in such a way that consumer classes will necessarily fail to satisfy for lack of adequate

substantiation.[6]  Consumers now need to keep a receipt or a can, bottle, tube, or wrapper of the offending consumer items in order to succeed in bringing a class action.

---

[6] Small-value consumer class actions certified by district courts nationwide would not pass muster in our Circuit because of our heightened ascertainability requirement. *See, e.g.*, *Hughes v. Kore of Ind. Enter., Inc.*, 731 F.3d 672, 675 (7th Cir. 2013) (reversing district court's order decertifying class of consumers who brought action against owners of automatic teller machines for failing to post notice on machines that they charged fee for use despite difficulty in determining which plaintiffs would have been deceived by lack of notice); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014) (certifying class of consumers who claimed defendant placed misleading "All Natural" label on olive oil bottles even though plaintiffs were unlikely to have retained receipts or packaging proving membership in class); *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012) (certifying class of plaintiffs who possessed promotional gift cards stating "No expiration date" that were voided by defendant or told that the cards had expired or been voided and thrown away cards even though some class members would only be able to claim class membership through affidavit); *see also Lilly v. Jamba Juice Co.*, No. 13-cv-2998, 2014 WL 4652283, at *4 (N.D. Cal. Sept. 18, 2014) (certifying class of consumers who purchased frozen smoothie kits containing label "All Natural" where product allegedly contained various artificial ingredients and where consumers did not necessarily have proof of purchase); *Allen v. Hylands, Inc.*, 300 F.R.D. 643, 658-59, 672 (C.D. Cal. 2014) (certifying class of plaintiffs who purchased homeopathic products where packaging contained alleged

The policy rationales that we cite in support of our expanded ascertainability requirement are relatively weak when compared to the significant policy justifications that motivate the class action mechanism. We have noted three rationales for our ascertainability requirement: (1) eliminating administrative burdens "incongruous" with the efficiencies of a class action, (2) protecting absent class members' rights to opt out by facilitating the best notice practicable, and (3) protecting the due process rights of defendants to challenge plaintiffs' proffered evidence of harm. *Marcus*, 687 F.3d at 593.

---

misrepresentations even though class members would have to self-identify without corroborating evidence); *Forcellati v. Hylands, Inc.*, No. 12-1983, 2014 WL 1410264, at \*5, \*13 (C.D. Cal. Apr. 9, 2014) (certifying class of plaintiffs who purchased children's cold or flu products within a prescribed time frame despite purchasers' lack of proof of purchase and defendants' lack of records identifying consumers who purchased their products via retail intermediaries); *McCrary*, 2014 WL 1779243, at \*7-8 (certifying class of purchasers of dietary joint supplement containing allegedly deceptive label despite plaintiffs' lack of proof of purchase); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) (certifying class of consumers who purchased cereal and snack products labeled as "All Natural" or "Nothing Artificial" but which allegedly contained synthetic ingredients in violation of various false advertising laws even though plaintiffs unlikely to have retained receipts or containers); *Ries*, 287 F.R.D. at 535 (certifying class of consumers who purchased iced tea with "natural" on label despite plaintiffs' lack of proofs of purchase, finding self-identification sufficient for ascertainability).

Eliminating "administrative burdens" really means short-circuiting the claims process by assuming that when individuals file claims, they burden the court. But claims administration is part of every class action. Imposing a proof-of-purchase requirement does nothing to ensure the manageability of a class or the "efficiencies" of the class action mechanism; rather, it obstructs certification by assuming that hypothetical roadblocks will exist at the claims administration stage of the proceedings.[7]

Denying class certification due to concerns about providing notice to class members makes little sense. Rule 23 requires the "best notice that is practicable under the circumstances" to potential class members after a class has been certified.[8] Potential difficulties in providing individualized notice to all class members should not be a reason to deny certification of a class. As the Supreme Court noted in *Phillips Petroleum Co. v. Shutts*, due process is satisfied when notice is "reasonably calculated" to reach the defined class. 472 U.S. 797, 812 (1985). The question is not whether every class member will receive actual individual notice, but whether class members can be notified of their opt-out rights consistent with due process. *See Dusenbery v. United States*, 534 U.S. 161 (2002) (holding that due process did not require actual notice to federal prisoner of his right to contest civil forfeiture, but rather, due process must be

---

[7] *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("[T]here is a big difference from the standpoint of manageability between the liability and remedy phases of a class action.").
[8] Fed. R. Civ. P. 23(c)(2)(B).

9

"reasonably calculated" to apprise a party of the pendency of an action).[9]

The concerns regarding the due process rights of defendants are unwarranted as well, because there is no evidence that, in small-claims class actions, fabricated claims impose a significant harm on defendants. The chances that someone would, under penalty of perjury, sign a false affidavit stating that he or she bought Bayer aspirin for the sake of receiving a windfall of $1.59 are far-fetched at best. On the other hand, while most injured individuals will find that it is not worth the effort to claim the few dollars in damages that the class action can provide, in the aggregate, this sum is significant enough to deter corporate misconduct. Our ascertainability doctrine, by focusing on making absolutely certain that compensation is distributed only to those individuals who were actually harmed, has ignored an equally important policy objective of class actions: deterring and punishing corporate wrongdoing. As Judge Posner, writing for the Court of Appeals for the Seventh Circuit, stated in *Hughes v. Kore of Indiana Enterprises, Inc.*, "when what is small is not the aggregate but the individual claim . . . that's the type of case in which class action treatment is most needful. . . . A class action, like litigation in general, has a deterrent as well as a compensatory objective." 731 F.3d 672, 677 (7th Cir. 2013). The rigorous application of the ascertainability requirement translates into impunity for

---

[9] *See also Girsh v. Jepson*, 521 F.2d 153, 159 n.12 (3d Cir. 1975) ("We do not mean to indicate that individual notice must be given in all cases."). Furthermore, Rule 23 requires courts to provide the best practicable notice *after* a class has been certified. *See* Fed. R. Civ. P. 23(c)(2)(B).

corporate defendants who have harmed large numbers of consumers in relatively modest increments.[10] Without the class action mechanism, corporations selling small-value items for which it is unlikely that consumers would keep receipts are free to engage in false advertising, overcharging, and a variety of other wrongs without consequence.

The concerns about defendants' due process rights are also overblown because damages liability under Rule 23 is determined in the aggregate: courts determine the extent of a defendant's monetary liability to the entire class. Therefore, whether an individual can establish membership in that class does not affect the rights of defendants not to pay in excess of their liability. *Carrera*'s concern that allowing undeserving individuals to claim damages will dilute deserving class

---

[10] As one court has noted,

> [a]dopting the *Carrera* approach would have significant negative ramifications for the ability to obtain redress for consumer injuries. Few people retain receipts for low-priced goods, since there is little possibility they will need to later verify that they made the purchase. Yet it is precisely in circumstances like these, where the injury to any individual consumer is small, but the cumulative injury to consumers as a group is substantial, that the class action mechanism provides one of its most important social benefits.

*Lilly*, 2014 WL 4652283, at \*4 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974)).

11

members' recoveries is unrealistic in modern day class action practice, and it makes little sense when used to justify the wholesale dooming of the small-value class action such that *no* injured plaintiff can recover at all. Moreover, this is an issue to be dealt with in the implementation of a class action settlement, not in conjunction with ascertaining the class for purposes of certification. Concerns about claims processing should not be used to scuttle these types of class actions altogether.

The policy concerns animating our ascertainability doctrine boil down to ensuring that there is a surefire way to get damages into the hands of only those individuals who we can be 100% certain have suffered injury, and out of the hands of those who may not have. However, by disabling plaintiffs from bringing small-value claims as a class, we have ensured that other policy goals of class actions—compensation of at least *some* of the injured and deterrence of wrongdoing, for example—have been lost. In small-claims class actions like *Carrera*, the real choice for courts is between compensating a few of the injured, on the one hand, versus compensating none while allowing corporate malfeasance to go unchecked, on the other. As such, where there are small-value claims, class actions offer the only means for achieving individual redress. As the Supreme Court stated in *Eisen*, when individual damages are so low, "[e]conomic reality dictates that petitioner's suit proceed as a class action or not at all." 417 U.S. at 161. The concern that we are defeating what is at the "core" of what the class action was designed to accomplish is very real. As Judge Rakoff noted in certifying a class over objections regarding ascertainability based on receipts or documentation:

12

> [T]he class action device, at its very core, is designed for cases like this where a large number of consumers have been defrauded but no one consumer has suffered an injury sufficiently large as to justify bringing an individual lawsuit. Against this background, the ascertainability difficulties, while formidable, should not be made into a device for defeating the action.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014). While a rigorous insistence on a proof-of-purchase requirement, which our heightened ascertainability jurisprudence has imposed, keeps damages from the uninjured, it does an equally effective job of keeping damages from the truly injured as well, and "it does so with brutal efficiency."[11]

Therefore, while I concur in the judgment, I suggest that it is time to retreat from our heightened ascertainability requirement in favor of following the historical meaning of ascertainability under Rule 23. I would therefore reverse the District Court's ruling, and hold that (1) hereafter, our ascertainability analysis will focus on class definition only, and (2) the District Court's analysis regarding the second prong of our ascertainability test was unnecessary. We thus would instruct the District Court to proceed to determine whether the class can be certified under the traditional mandates of Rule 23. Until we revisit this issue as a full

---

[11] Myriam Gilles, *Class Dismissed: Contemporary Judicial Hostility to Small-Claims Consumer Class Actions*, 59 DePaul L. Rev. 305, 308 (2010).

Court or it is addressed by the Supreme Court or the Advisory Committee on Civil Rules, we will continue to administer the ascertainability requirement in a way that contravenes the purpose of Rule 23 and, in my view, disserves the public.